[899 NYS2d 193]

Tetla Roques, Appellant, v David H. Noble, M.D., et al., Respondents, et al., Defendant.

First Department, April 20, 2010

APPEARANCES OF COUNSEL

*Thomas Torto*, New York City (*Jason Levine* of counsel), and *David L. Taback, P.C.*, New York City, for appellant.

*Kopff, Nardelli & Dopf LLP*, New York City (*Martin B. Adams* of counsel), for David H. Noble, M.D., and another, respondents.

*Martin Clearwater & Bell LLP*, New York City (*Arjay G. Yao, Jeffrey A. Shor* and *Steven A. Lavietes* of counsel), for Kamran Tabaddor, M.D., and another, respondents.

## OPINION OF THE COURT

ROMÁN, J.

This action alleges medical malpractice, lack of informed consent and wrongful death. Defendants allegedly misdiagnosed decedent's condition and performed an unnecessary and contraindicated medical procedure, thereby injuring decedent and ultimately causing his death.

Defendants[*] moved for summary judgment solely on the cause of action for wrongful death, and the trial court granted defendants' motions finding that plaintiff failed to raise an issue of fact with respect to whether the malpractice alleged caused decedent's death. We now reverse.

In support of their motion, defendants Kamran Tabaddor, M.D. and New York Neuroscience Institute, P.C. submitted, among other things, an affirmation from Dr. Richard Stein, a board-certified physician in internal medicine and cardiovascular disease. Based on a review of decedent's medical records, evincing atherosclerosis, hypertension and diabetes, and decedent's autopsy report, listing the cause of death as atherosclerotic and hypertensive cardiovascular disease, Dr. Stein concludes that decedent's death was not caused by any of the procedures performed upon him by the defendants. Rather, Dr. Stein concludes that decedent died of unrelated and preexisting cardiovascular disease.

In opposition to defendants' motions, plaintiff submitted, among other things, an affirmation from a physician board cer-

---

[*] With the exception of defendant Our Lady of Mercy Medical Center, against whom this action was discontinued, all defendants moved for summary judgment on the ground discussed.

tified in internal medicine and cardiovascular disease. Based on a review of decedent's medical records and citing medical literature, plaintiff's medical expert concludes that decedent's death was in fact caused by the medical treatment rendered by the defendants. Specifically, plaintiff's expert alleges that insofar as stress can trigger a heart attack, decedent's death was hastened and precipitated by stress, directly resulting from defendants' malpractice.

In an action premised upon medical malpractice, a defendant doctor establishes prima facie entitlement to summary judgment when he/she establishes that in treating the plaintiff there was no departure from good and accepted medical practice or that any departure was not the proximate cause of the injuries alleged (*Thurston v Interfaith Med. Ctr.*, 66 AD3d 999, 1001 [2009]; *Myers v Ferrara*, 56 AD3d 78, 83 [2008]; *Germaine v Yu*, 49 AD3d 685 [2008]; *Rebozo v Wilen*, 41 AD3d 457, 458 [2007]; *Williams v Sahay*, 12 AD3d 366, 368 [2004]). When medical malpractice forms the basis of a wrongful death action, in establishing that he/she did not proximately cause the injuries alleged to have caused plaintiff's death, a defendant establishes prima facie entitlement to summary judgment as to the wrongful death action as well (*see Koeppel v Park*, 228 AD2d 288 [1996]; *Thurston v Interfaith Med. Ctr.*, 66 AD3d 999 [2009], *supra*; *Myers v Ferrara*, 56 AD3d 78 [2008], *supra*).

With respect to opinion evidence, it is well settled that expert testimony must be based on facts in the record or personally known to the witness, and that an expert cannot reach a conclusion by assuming material facts not supported by record evidence (*Cassano v Hagstrom*, 5 NY2d 643, 646 [1959]; *Gomez v New York City Hous. Auth.*, 217 AD2d 110, 117 [1995]; *Matter of Aetna Cas. & Sur. Co. v Barile*, 86 AD2d 362, 364-365 [1982]). Thus, a defendant in a medical malpractice action who, in support of a motion for summary judgment, submits conclusory medical affidavits or affirmations fails to establish prima facie entitlement to summary judgment (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Cregan v Sachs*, 65 AD3d 101, 108 [2009]; *Wasserman v Carella*, 307 AD2d 225, 226 [2003]). Further, medical expert affidavits or affirmations, submitted by a defendant, which fail to address the essential factual allegations in the plaintiff's complaint or bill of particulars fail to establish prima facie entitlement to summary judgment as a matter of law (*Cregan* at 108; *Wasserman* at 226).

Once the defendant meets his burden of establishing prima facie entitlement to summary judgment, it is incumbent on the plaintiff, if summary judgment is to be averted, to rebut the defendant's prima facie showing (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The plaintiff must rebut defendant's prima facie showing without "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence" (*id.* at 325). Specifically, to avert summary judgment, plaintiff must demonstrate that the defendant did in fact commit malpractice and that the malpractice was the proximate cause of the plaintiff's injuries (*Coronel v New York City Health & Hosps. Corp.*, 47 AD3d 456 [2008]; *Koeppel* at 289). In order to meet the required burden, the plaintiff must submit an affidavit from a medical doctor attesting that the defendant departed from accepted medical practice and that the departure was the proximate cause of the injuries alleged (*Thurston* at 1001; *Myers* at 84; *Rebozo* at 458).

Here, defendants established prima facie entitlement to summary judgment with regard to the cause of action for wrongful death. As previously noted, Dr. Stein's affirmation established that the malpractice, if any, was not the proximate cause of decedent's death. Instead, Dr. Stein concluded that decedent's death was caused by preexisting cardiovascular disease. Dr. Stein's affirmation constituted competent evidence inasmuch as it is based on the record and addressed the pertinent allegations in the complaint.

In opposition, however, plaintiff's expert's opinion, based upon his review of the decedent's medical records, as well as pertinent medical literature, clinical studies and his own experience, raised factual issues as to whether defendants' treatment of the decedent caused or substantially contributed to his death. Specifically, plaintiff's expert concluded that defendants' malpractice stressed decedent and that the stress contributed to the hastening of his cardiovascular disease and thus to his death. Accordingly, questions of fact preclude summary judgment in defendants' favor.

Accordingly, the order of the Supreme Court, Bronx County (Sallie Manzanet-Daniels, J.), entered July 1, 2008, which granted defendants' motions to dismiss the wrongful death cause of action, should be reversed, on the law, without costs, the motions denied and the cause of action reinstated.

DeGrasse, J. (dissenting). Plaintiff's decedent, Patrick

Roques, Sr., died at the age of 59 on January 1, 2006. The autopsy report lists hypertensive and atherosclerotic cardiovascular disease as the cause of death and diabetes mellitus as a contributing condition. Plaintiff's wrongful death cause of action is based on allegations of medical malpractice by defendants Noble and Tabaddor, a radiologist and a neurosurgeon, respectively. Specifically, plaintiff alleges that on the basis of Noble's misinterpretation of a CT scan and an MRI film, Tabaddor performed two unnecessary and/or contraindicated procedures, a craniotomy and a cerebral stereotactic biopsy.

Tabaddor and the New York Neuroscience Institute, with which Tabaddor was associated, moved for summary judgment on the ground that there was no causal relationship between decedent's death and his treatment of the decedent. Noble and his medical group, defendant University Diagnostic Medical Imaging, similarly sought summary judgment on the ground that there is no causal connection between the decedent's death and Noble's conduct. Supreme Court granted both motions, finding the affirmation of plaintiff's medical expert insufficient to raise a triable issue of fact as to whether the decedent's death was caused by the wrongful act, neglect or default of Tabaddor or Noble. I dissent because I disagree with the majority's conclusion that the motions should have been denied.

In order to establish a prima facie case of medical malpractice, a plaintiff must show that a defendant deviated from accepted medical practice and that the alleged deviation proximately caused injury (*see Koeppel v Park*, 228 AD2d 288, 289-290 [1996]). On a motion for summary judgment in a medical malpractice case, a defendant meets the initial burden by establishing that he or she did not deviate from accepted medical practice or proximately cause injury (*Mattis v Keen, Zhao*, 54 AD3d 610, 611 [2008]). In support of their motions, defendants submitted the affirmation of Dr. Richard Stein, a physician board certified in internal medicine and cardiovascular disease. Dr. Stein opined that the decedent's death was not proximately caused by the surgical procedures performed by Dr. Tabaddor eight months earlier. I agree with the majority's conclusion that Dr. Stein's affirmation established defendants' prima facie entitlement to summary judgment. Hence, the burden shifted to plaintiff to produce evidence in admissible form sufficient to establish the existence of a triable issue of fact (*see Sisko v New York Hosp.*, 231 AD2d 420, 422 [1996], *lv dismissed* 89 NY2d 982 [1997]).

In a medical malpractice action, once a defendant has established the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby, a plaintiff, in opposition, "must submit a physician's affidavit of merit attesting to a departure from accepted practice and containing the attesting doctor's opinion that the defendant's omissions or departures were a competent producing cause of the injury" (*Keevan v Rifkin*, 41 AD3d 661, 662 [2007] [internal quotation marks and citation omitted]).

To meet her burden, plaintiff submitted the affirmation of a physician who opined that the operative procedures performed by Dr. Tabaddor and their sequelae caused and substantially contributed to the decedent's hypertension, atherosclerotic cardiovascular disease and ultimate demise. Even if sufficient to raise a factual issue as to whether the surgical procedures were causally related to the decedent's death, plaintiff's expert's affirmation falls short of the proof required under *Keevan* because it does not set forth any alleged departures from good and accepted medical practice. Therefore, I would affirm the order entered below.

MAZZARELLI, J.P., and CATTERSON, J., concur with ROMÁN, J.; DEGRASSE, J., dissents in a separate opinion.

Order, Supreme Court, Bronx County, entered July 1, 2008, reversed, on the law, without costs, the motions denied and the cause of action reinstated.