| **White v Turitz** |
| --- |
| 2024 NY Slip Op 33085(U) |
| August 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 805070/2020 |
| Judge: Kathy J. King |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:** <u>**HON. KATHY J. KING**</u>                    **PART**                    **06**

*Justice*

------------------------------------------------------------------------X

MELISSA WHITE,

                       Plaintiff,

             - v -

AMY L. TURITZ, SIERRA SEAMAN, MARIA
ANDRIKOPOULOU, BRUCE FEINBERG, MARILYN C.
BALICO, THE NEW YORK AND PRESBYTERIAN
HOSPITAL, NEWYORK-PRESBYTERIAN THE
UNIVERSITY HOSPITAL OF COLUMBIA AND CORNELL

                    Defendant.

------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 805070/2020 |
| **MOTION DATE** | 07/18/2022 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75

were read on this motion to/for                  DISMISS            .

      Upon the foregoing papers, and after oral argument, Defendants AMY L. TURITZ, M.D.,

SIERRA SEAMAN, M.D., MARIA ANDRIKOPOULOU, M.D., BRUCE FEINBERG, M.D.,

MARILYN C. BALICO, R.N., THE NEW YORK AND PRESBYTERIAN HOSPITAL and

NEW YORK-PRESBYTERIAN THE UNIVERSITY HOSPITAL OF COLUMBIA AND

CORNELL[1] move for summary judgment, pursuant to CPLR 3212, dismissing Plaintiff's

complaint with prejudice, and directing the Clerk of the Court to enter judgment in favor of the

Defendants and against the Plaintiff together with statutory costs and disbursements.

      Plaintiff opposes Defendants' motion and argues that the requested relief be denied in its

entirety.

---

[1] "The New York and Presbyterian Hospital" and "New York-Presbyterian The University Hospital of Columbia and Cornell" are the same entity and are referred to hereinafter as New York Presbyterian.

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**                    **Page 1 of 12**
**Motion No.  001**

## BACKGROUND

Plaintiff's complaint sounds in medical malpractice, and contains three causes of actions - medical malpractice, negligent hiring and/or supervision, and lack of informed consent. The essence of the claim is that Defendants negligently caused and failed to timely detect and treat an enterotomy—a perforation of the bowel, also known as the intestine—alleged to have occurred during Plaintiff's C-section surgery and which allegedly remained undetected during Plaintiff's subsequent post-operative hospitalization.

## FACTS

Plaintiff Melissa White presented to Dr. Amy Turitz at New York Presbyterian on December 28, 2017, for an initial prenatal examination. The record indicates that Plaintiff had a medical history of preeclampsia/chronic hypertension with preterm labor, history of classical C-section, and obesity. Thereafter, on July 17, 2018, she presented to New York Presbyterian for a scheduled C-section to be performed by Dr. Turitz. She was advised by physician assistant Petra Sealy about potential risks and complications of the surgical procedure, and Plaintiff signed the surgical consent form. Dr. Turitz also signed a note describing this discussion in Plaintiff's medical records. The C-section was performed by Dr. Turitz who was assisted by Dr. Sierra Seaman and Dr. Maria Andrikopoulou. During the surgical procedure, Plaintiff's bowel and bladder were observed and noted to be adhered to the abdominal wall, requiring Dr.Turitz to further separate the rectus muscles to gain access to the peritoneal cavity and uterus.[2] Plaintiff's medical records indicate that "[a]ll surgical sites were inspected and deemed to be hemostatic." Plaintiff was taken to recover in stable condition. Although the operative report noted that there were no complications, it also noted several times that the C-section was "complicated by

---

[2] Neither party raises objections or complications with the extraction of the infant.

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 2 of 12**

2 of 12

[* 2]

adhesions" with an estimated 1,200 mL of blood loss. Plaintiff testified at her deposition that coming out of the C-section, she felt "[d]azed, groggy, uncomfortable, nauseous," and her pain level was around a seven or eight out of ten. Plaintiff's medical records indicate that she was given medications post-operatively for severe to moderate pain as well as for nausea and vomiting. Plaintiff alleges her abdomen was hard and swollen post operatively. The records show that Plaintiff was discharged from the recovery unit on July 17, 2018, based on normal vitals.

Plaintiff's medical records indicate that on July 18, 2018, Plaintiff had tolerated a regular diet, her pain was adequately controlled by medication, and she was not yet ambulating or passing flatus. Plaintiff denied any nausea, vomiting, shortness of breath, chest pain, headache or dizziness. Plaintiff was assessed by Dr. Bruce Feinberg, M.D., the attending OB/GYN, who indicated Plaintiff had a normal post-operative course after a C-section complicated by adhesions, and vital signs were stable. On July 18th, nausea and vomiting were documented, plaintiff was tachycardic, was not able to tolerate a regular diet prior to being discharged, and had received additional medications for pain.

On July 19, 2018, while Plaintiff's medical records indicate normal blood pressure, some vomiting and nausea, incisional pain controlled with medications, positive bowel sounds and flatus, Plaintiff testified in her EBT that Marilyn C. Balico, R.N. was unresponsive to her complaints.

Plaintiff was discharged from the hospital on the morning of July 20, 2018, and medical records show no further vomiting, vitals in the normal range, and ability to ambulate most of the night. However, Plaintiff claims she felt "horrible" after discharge and had trouble breastfeeding due to the continued pain, despite taking medication, and testified that she was experiencing

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 3 of 12**

vomiting, had abdominal and back pain, difficulty sleeping, felt hot, had difficulties going to the bathroom and passing flatus, difficulty taking deep breaths, and had trouble walking due to pain.

On July 21, 2018, one day after discharge, Plaintiff called Dr. Turitz's office and was instructed by the on-call doctor to continue taking the pain medication as instructed and to call back or go into the office if her symptoms did not improve within two days. The next day, Plaintiff experienced a "fluttering sensation" in her chest and presented to Lawrence Hospital with complaints of shortness of breath with discomfort in her abdomen; Plaintiff was tachycardic, febrile, and had fecal matter at the C-section incision site, with purulent drainage (pus). At Lawrence Hospital, Plaintiff was given morphine for pain and subsequently transferred to Columbia University Irving Medical Center. Plaintiff was admitted to the Columbia SICU with an infection at the surgical site. Dr. Turitz saw the patient and assessed her as having fascial dehiscence with a potential bowel perforation/enterocutaneous fistula/abscess.

Thereafter, on July 24, 2018, Plaintiff underwent an exploratory laparotomy, abdominal washout, and small bowel resection performed by Dr. Tracey Arnell and Dr. Wright. Plaintiff eventually stabilized with normal vital signs and was cleared for discharge on August 1, 2018.

On August 12, 2018, Plaintiff presented to the emergency department of New York Presbyterian with complaints of abdominal pain. Physical examination revealed Plaintiff's abdomen was soft, non-distended, with no rebound tenderness, and bowel sounds were positive. Plaintiff was admitted to the hospital for further monitoring, and on August 14, 2018, a renal ultrasound found abnormalities suggesting renal artery stenosis. Plaintiff's abdominal pain was noted as being likely secondary to normal post-operative healing and a follow-up was recommended. Plaintiff was cleared for discharge later that day.

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 4 of 12**

4 of 12

[* 4]

On March 4, 2020, Plaintiff commenced the underlying action and in the Verified Bill of Particulars alleges that Drs. Amy Turitz, Seaman and Andrikopoulou, were negligent, careless, and committed medical and professional malpractice, by departing from good and accepted standards of care in the care, treatment, management, advice, and/or services rendered to Plaintiff including, but not limited to, the following:

1) causing the patient to sustain a perforated bowel/enterotomy during the C-section on July 17, 2018; failing to detect and/or diagnose the enterotomy during surgery and prior to closing the surgical wound;

2) failing to timely and properly treat Plaintiff's signs, symptoms and/or complaints; failing to refer Plaintiff to appropriate specialists;

3) discharging and/or approving and/or recommending for discharge and/or premature discharge of Plaintiff despite signs and symptoms of a perforated bowel/enterotomy;

4) failing to provide or assign experienced personnel to Plaintiff's care and to exercise supervisory control over personnel; and

5) failing to obtain Plaintiff's informed consent.

Plaintiff alleges that Defendants' negligence caused injuries including small bowel enterotomy, infection, need for exploratory laparotomy on July 24, 2018, for resection of small bowel (15cm), chronic abdominal pain, emotional distress, anxiety, and depression.

## DISCUSSION

It is well-settled that "[t]o sustain a cause of action for medical malpractice, a plaintiff must prove two essential elements: (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of plaintiff's injury" (*Frye v Montefiore*

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 5 of 12**

5 of 12

*Med. Ctr.*, 70 AD3d 15, 24 [1st Dept 2009]; *see Roques v Noble*, 73 AD3d 204 [1st Dept 2010]; *Elias v Bash*, 54 AD3d 354 [2d Dept 2008]; *DeFilippo v New York Downtown Hosp.*, 10 AD3d 521 [1st Dept 2004]). A defendant physician moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by establishing the absence of a triable issue of fact as to his or her alleged departure from accepted standards of medical practice (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Frye v Montefiore Med. Ctr.*, 70 AD3d 15), or by establishing that the plaintiff was not injured by such treatment (*see McGuigan v Centereach Mgt. Group, Inc.*, 94 AD3d 955 [2d Dept 2012]; *Sharp v Weber*, 77 AD3d 812 [2d Dept 2010]; *see generally Stukas v Streiter*, 83 AD3d 18 [2d Dept 2011]). To satisfy this burden, a defendant must present expert opinion testimony that is supported by the facts in the record, which address and rebuts specific allegations of malpractice set forth in the plaintiff's complaint or the bill of particulars, and is detailed, specific, and factual in nature (*see Roques v Noble*, 73 AD3d at 206; *Joyner-Pack v. Sykes*, 54 AD3d 727 [2d Dept 2008]; *Koi Hou Chan v Yeung*, 66 AD3d 642 [2d Dept 2009]; *Jones v Ricciardelli*, 40 AD3d 935 [2d Dept 2007]). Furthermore, to satisfy his or her burden on a motion for summary judgment, admissible forms of proof include affidavits, pleadings, written admissions, deposition testimony and medical records (*Id.*; *Olan v Farrell Lines*, 64 NY2d 1092, 489 NYS2d 884 [1985]; *Zuckerman v City of New York*, 49 NY2d 557, 427 NYS2d 595 [1980]).

Once the proponent of a summary judgment motion makes a showing of entitlement to dismissal by tendering evidence sufficient to demonstrate the absence of material issues of fact, the burden shifts to the opposing party "to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Alvarez*, 508 NYS2d at 925; *see also Menzel v Plotnick*, 202 AD2d 558 [2d Dept 1994];

**805070/2020  WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 6 of 12**

6 of 12

*Salamone v Rehman*, 178 AD2d 638 [2d Dept 1991]). However, mere speculation or conjecture by the opposing party does not constitute admissible evidentiary proof and is insufficient to withstand summary judgment (*Pank v Village of Canajoharie*, 275 AD2d 508, 712 NYS2d 210, 211 [3d Dept 2000]).

In support of their motion for summary judgment, Defendants submit the expert affidavit of Dr. Gary Mucciolo, a board-certified Obstetrician and Gynecologist, who opines to a reasonable degree of medical certainty based upon review of the Plaintiff's medical records, hospital records, and the deposition testimony of Plaintiff, Dr. Turitz, Dr. Feinberg, and Dr. Seaman.

As to Plaintiff's medical malpractice claim that Defendants failed to heed the significance of Plaintiff's medical history, Dr. Mucciolo opines that this was appropriately attended to by Dr. Turitz who counseled Plaintiff on the risk of preeclampsia/chronic hypertension associated with obesity in her initial visit, discussed why a C-section was the safest option for delivery, and prescribed aspirin to reduce Plaintiff's high blood pressure prior to surgery. Dr. Mucciolo also addressed Plaintiff's claim that Defendants failed to timely order diagnostic testing during her pre-operative treatment and opines that Plaintiff's care was thorough and complied with all accepted standards of care.

As to Plaintiff's claim that Defendants failed to take necessary precautions during the C-section, Dr. Mucciolo opines that Dr. Turitz took precautions consistent with the standard of obstetric care during the C-section, particularly after finding adhesions intraoperatively. Citing Dr. Turitz's deposition testimony, Dr. Mucciolo opines that Dr. Turitz utilized the only option she could have taken intraoperatively due to the necessity of accessing the uterus to extract the fetus which was within her medical judgment.

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 7 of 12**

7 of 12

Dr. Mucciolo opines that Defendants did not fail to detect and/or diagnose the enterotomy during or after the July 17, 2018, C-section. While Dr. Mucciolo notes that an enterotomy is a known risk or complication with C-section surgery, he opines that Dr. Turitz inspected Plaintiff's bowel and bladder adhesions discovered during surgery, noted them to be hemostatic, and closed the surgical wound, which was within the obstetrical standard of care. According to Dr. Mucciolo, Dr. Turitz had no reason to examine the portions of the bowel that were not exposed during surgery, and that if an enterotomy had occurred, Plaintiff would have visibly deteriorated after the surgery. As a result, Mucciolo opines there was no reason to suspect enterotomy due to Plaintiff's clinical outlook, and there was no failure to diagnose or treat the same. Dr. Mucciolo also opines that a washout prior to closing the surgical wound was unnecessary and that there was no need to refer Plaintiff for a consult prior to closing the surgical wound since no enterotomy was visible at the time of the C-section. Dr. Mucciolo stated that Dr. Turitz's training and experience justified her performing the C-section without a general surgical consult. Thus, there was no reason to believe that a general surgeon would have obtained any different result than Dr. Turitz.

Dr. Mucciolo further opines that Plaintiff's vital signs were normal for the three days following the C-section and that Plaintiff's discharge did not deviate from the accepted standard of care since, upon discharge, she was given a follow up appointment with Dr. Turitz and advised that if she experienced fever, worsening symptoms, chills, nausea and/or vomiting she should call the doctor.

Based on the expert affirmation of Dr. Mucciolo, the Court finds that Defendants have established prima facie entitlement to summary judgment as a matter of law on Plaintiff's medical malpractice cause of action, thereby shifting the burden to Plaintiff to demonstrate a

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 8 of 12**

8 of 12

genuine issue of material fact. In this regard, Plaintiff proffers the expert medical opinion of "Expert A,"[3] a board-certified physician in Obstetrics and Gynecology, to rebut Defendants' prima facie showing. Expert A relies on Plaintiff's medical records, deposition testimony by Plaintiff and Defendants, and affidavits in support of the motion for summary judgment in addition to his/her medical knowledge and expertise in forming an opinion to a reasonable degree of medical certainty. Expert A opines that the diagnosis, care, treatment, and management provided to Plaintiff by Defendants departed from good and accepted standards of medical care, treatment and practice by (1) failing to diligently search for, discover, and diagnose the enterotomy intraoperatively; and (2) ignoring Plaintiff's signs and symptoms of enterotomy and failing to discover and diagnose such prior to being discharged on July 20, 2018. Expert A further opines that these departures were the direct and substantial cause of Plaintiff's injuries.

Expert A refutes defense expert Dr. Mucciolo's assertion that a perforation is a known risk of a C-section and that Plaintiff's injury would have occurred absent negligence, and that it is within the standard of care to ensure that no perforation occurred intraoperatively. Expert A notes that even if Defendants missed the bowel perforation intraoperatively, Plaintiff had exhibited classic signs and symptoms of a bowel enterotomy, leading Expert A to conclude that Defendants ignored Plaintiff's complaints and discharged her with an enterotomy, requiring emergency surgery days later. Expert A points to the Operative Report, opining that the information which shows that Dr. Turitz inspected the bowel only visually and did not "run" the bowels as required in Expert A's medical opinion, which failed to meet the standard of care. Expert A opines that a proper inspection by "running the bowels," should have been performed, which would involve the surgeon taking out the bowels and running each bowel segment

---

[3] Plaintiff has redacted the name of their expert pursuant to CPLR § 3101(d).

**805070/2020 WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No. 001**

**Page 9 of 12**

implicated in the surgery through their fingers to evaluate whether injury occurred, including any perforations or leaks. According to Expert A, if a surgeon is unsure which portion of the bowel was encountered, the entire bowel should be run.

Expert A opines that Defendants missed clear postoperative signs of enterotomy including tachycardia, vomiting, nausea, and significant abdominal pain which should have alerted Defendants to Plaintiff's enterotomy and prompted additional testing or examination. Expert A opines that had the perforation been caught earlier, Plaintiff's subsequent injuries would not have been as severe; during Plaintiff's operation four days after C-section, surgeons discovered two liters of fecal matter and necrosis, which required two surgeries to adequately clean. Expert A points to medical records and deposition testimony that Plaintiff had a higher likelihood of having a bowel perforation due to her previous C-section and the presence of adhesions and that Defendants failed to treat Plaintiff with the care that a high-risk postpartum patient required.

Here, Plaintiff's expert established the requisite nexus between the malpractice allegedly committed by Defendants and resulting injury, thereby rebutting the Defendants' prima facie showing (*Alvarez,* 68 NY2d at 324; *Mignoli v Oyugi,* 82 AD3d 443, 918 NYS2d 86 [1st Dept 2011]). The Court finds that the conflicting expert affidavits of Plaintiff and Defendants' raise triable issue of fact (*see Roques v Noble,* 73 AD3d 204, 206, 899 NYS2d 193 [1st Dept 2010]). It is well established that "[s]ummary judgment is not appropriate ... [when] the parties [submit] conflicting medical expert opinions because [s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury" (*Cummings v Brooklyn Hosp. Ctr*., 147 AD3d 902, 904 [2d Dept 2017], quoting *DiGeronimo v Fuchs*, 101 AD3d 933 [2d Dept 2012]

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 10 of 12**

10 of 12

[internal quotation marks omitted]; *see Elmes v Yelon*, 140 AD3d 1009 [2d Dept 2016]; *Leto v Feld*, 131 AD3d 590 [2d Dept 2015]).

Defendants have also established prima facie entitlement to summary judgment as to Plaintiff's second cause of action for negligent hiring and supervision by New York Presbyterian Hospital and failure to provide or assign experienced personnel to Plaintiff's care. "Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of *respondeat superior* and no claim may proceed against the employer for negligent hiring, retention, supervision or training" (*Talavera v Arbit*, 18 AD3d 738, 738 [2d Dept 2005]; *see Simpson v Edghill*, 169 AD3d 737, 739 [2d Dept 2022]). Here, Dr. Mucciolo opines that Dr. Turitz acted within the scope of her employment and provided the appropriate standard of obstetrical care to Plaintiff. Dr. Mucciolo also opines that Moving Defendants, Drs. Andrikopoulou, Seaman, and Marilyn Balico, RN, were properly equipped to provide preoperative, intraoperative and postoperative care to Plaintiff.

Here, Plaintiff, in opposition, failed to rebut Defendants prima facie showing that they acted within the scope of their employment and used proper techniques and methods appropriate to their expertise and skill. Accordingly, Plaintiff's cause of action for negligent hiring or supervision is dismissed.

Finally, Defendants have also established prima facie entitlement to summary judgment as to Plaintiff's cause of action for lack of informed consent is well-settled that a defendant moving for summary judgment on a lack of informed consent claim must demonstrate that "a plaintiff must demonstrate that (1) the practitioner failed to disclose the risks, benefits and alternatives to the procedure or treatment that a reasonable practitioner would have disclosed, . It and (2) a reasonable person in the plaintiff's position, fully informed, would have elected not

**805070/2020   WHITE, MELISSA vs. TURITZ, M.D., AMY L.**
**Motion No.  001**

**Page 11 of 12**

[* 11]

to undergo the procedure or treatment" (*Orphan v Pilnik*, 15 NY3d 907, 908 [2010]; *see* Public Health Law §2805 (d) [1], [3]).

Dr. Mucciolo opines that Dr. Turitz adequately discussed the risks, benefits, alternatives and potential complications of the C-section, including information from the American College of and Gynecologists regarding labor and delivery, such that Plaintiff was able to make an informed consent for the procedure. According to Dr. Mucciolo, a bowel injury/enterotomy is a known potential complication of C-sections and Plaintiff was aware of this prior to consenting to the surgery. While Plaintiff acknowledged in her deposition that she understood the risk of complications associated with the C-section and that she reviewed the consent form, which included the associated risks before signing it, in opposition Plaintiff failed to raise a triable issue of fact by providing proof in admissible form that the consent was legally insufficient. Expert medical testimony is required to prove the insufficiency of the information disclosed to the plaintiff (CPLR 4401-1) (*see Orphan v Pilnik*, 15 NY3d at 908). Expert testimony is necessary to show that the procedure's risk was material, and that lack of informed consent proximately caused the injury (*see Balzola v Giese*, 107 AD3d 587, 588-89 [1st Dept 2013]).

Based on the foregoing, it is hereby

**ORDERED,** that the motion is granted to the extent of dismissing the second and third causes of actions in Plaintiff's complaint, and in all other respects the motion is denied.

| **8/30/2024** | | | |
|---|---|---|---|
| **DATE** | | **KATHY J. KING, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 12]