Hoang Bui v Reisacher (2024 NY Slip Op 51771(U))

[*1]

Hoang Bui v Reisacher

2024 NY Slip Op 51771(U)

Decided on December 30, 2024

Supreme Court, New York County

King, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 30, 2024
Supreme Court, New York County

Hoang Bui, Plaintiff,

against
William Reisacher, WEILL CORNELL OTOLARYNGOLOGY HEAD AND NECK SURGERY, WEILL CORNELL MEDICINE, Defendant.

Index No. 805278/2020

Gencarelli and Rimassa Law Firm, LLC, Attorneys for Plaintiff, 437 Kingsland Avenue, Lyndhurst, NJ 07071
Aaronson Rappaport Feinsten 7 Duetsch, LLP, Attorneys for all named Defendants, 600 3rd Ave, New York, NY 10016

Kathy J. King, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 80, 81, 82, 86, 87 were read on this motion to/for SUMMARY JUDGMENT (AFTER JOINDER).
The following e-filed documents, listed by NYSCEF document number (Motion 002) 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 83, 84, 85, 88, 89, 90, 91 were read on this motion to/for PARTIAL SUMMARY JUDGMENT.
Upon the foregoing papers, Defendants, William Reisacher, M.D. ("Dr. Reisacher") and Cornell University s/h/a "Weill Cornell Otolaryngology Head and Neck Surgery and Weill [*2]Cornell Medicine" ("CORNELL"), (collectively, the "Defendants"), move for summary judgment dismissing plaintiff's complaint, pursuant to CPLR 3212.
Plaintiff, HOANG BUI, submits opposition and cross-moves,[FN1]
pursuant to CPLR 3212, for partial summary judgment on the issues of liability and causation.
 BACKGROUND
On January 15, 2019, Mr. Bui began to experience hearing loss and tinnitus in his left ear, which had not been present prior to that date. He had continued hearing loss and loud tinnitus in his left ear on January 16, 2019, and sought medical care at the Emergency Room of NYU Langone Hospital. A physical examination of Plaintiff was conducted by a Physician's Assistant and Registered Nurse and he was diagnosed as having tympanic membrane perforation. He was discharged the same day with instructions to follow up with an Ear, Nose, and Throat doctor. Upon discharge, Plaintiff was seen by Dr. Reisacher, an Ear, Nose, and Throat specialist, employed by Cornell.
Upon examination, Dr. Reisacher diagnosed Plaintiff with hearing loss and tinnitus of the left ear, and advised Plaintiff that an audiogram would be scheduled. The audiogram, performed on January 25, 2019, revealed normal hearing in the right ear and severe to profound hearing loss in the left ear. Thereafter, Dr. Reisacher diagnosed Plaintiff with sensorineural hearing loss of the left ear, and documented that Plaintiff felt vibration and experienced dizziness at high intensity levels on the left side and was unable to repeat words. Plaintiff was prescribed a steroid, Prednisone, in a tapered dosing, resulting in a total dosage of 280 mg. over the course of 12 days. According to the affidavit of the Plaintiff, he did not experience any improvement of his symptoms after this drug regimen was completed.
On or about January 26, 2019, Plaintiff traveled to Vietnam to visit his family, and sought medical treatment for his ongoing hearing loss and tinnitus of the left ear. He was hospitalized for approximately 40 days on an out-patient basis. During that time, diagnostic testing was done, which included two audiograms (01/28/2019 and 02/01/2019), and a tuning fork test. Plaintiff also received a high dosage of steroids intravenously, and more than 30 hyperbaric oxygen treatments. The audiogram performed on February 1, 2019, showed improved hearing of the left ear, but no high tone improvement. While Plaintiff received treatment in Vietnam through late March of 2019, his hearing loss and tinnitus of the left ear have remained the same since February 2019. 
This action was commenced by filing a Summons and Complaint on September 11, 2020, and issue was joined on October 21, 2020. The gravamen of this case concerns an alleged delay in diagnosing and improperly treating left-sided sensorineural hearing loss ("SNHL") by Defendants from January 16, 2019 through January 25, 2019. In this regard, Plaintiff's Bills of [*3]Particulars specifically alleges that his left sided SNHL was an otologic emergency, and that Dr. Reisacher should have performed an audiogram or tuning fork test within the first 24 hours of the onset of his sudden hearing loss to evaluate the condition, despite any physical cause for his condition, such as an ear drum perforation or canal obstruction by earwax. Plaintiff also alleges that Dr. Reisacher failed to prescribe medication and therapy at his initial visit, on January 16, 2019, despite the lack of diagnosis on that date, and claims that Dr. Reisacher prescribed an improper dosing schedule and insufficient dose of oral Prednisone, a steroid, at the second visit on January 25, 2019. Further, Plaintiff argues that had he been fully informed, he would have elected an alternate course of treatment between January 16th and January 25th of 2019. Further, Plaintiff claims that a discussion about hyperbaric oxygen treatment should have been held, within the first 7 days of the onset of his hearing loss. Plaintiff claims that because of this alleged negligence he suffered permanent and chronic hearing loss, tinnitus, and other alleged injuries.

DISCUSSION
A proponent of a summary judgment motion must make prima facie showing of entitlement to judgment as a matter of law by submitting admissible evidence that demonstrates the absence of material issues of fact that would require a trial (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]). In a medical malpractice action, a movant must provide evidentiary proof in the form of expert opinions and factual evidence establishing that the defendant complied with accepted standards of medical care and practice, obtained informed consent; and/or the defendant's conduct was not a proximate cause of plaintiff's alleged injuries (see NY Public Health Law § 2805-d; see also Alvarez v Prospect Hosp., 68 NY2d at 325). To satisfy the burden on a motion for summary judgment, a defendant must address and rebut specific allegations of malpractice set forth in the plaintiffs' bill of particulars (see Wall v Flushing Hosp. Med. Ctr., 78 AD3d 1043 [2d Dept 2010]; Grant v Hudson Val. Hosp. Ctr., 55 AD3d 874 [2d Dept 2008]; Terranova v Finklea, 45 AD3d 572 [2d Dept 2007]).
Once the defendant establishes prima facie entitlement to judgment as a matter of law, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact by submitting an expert's affidavit or affirmation attesting to a departure from accepted medical practice and opining that the defendant's acts or omissions were a competent producing cause of the plaintiff's injuries (see Roques v Noble, 73 AD3d 204, 207 [1st Dept 2010]; Landry v Jakubowitz, 68 AD3d 728 [2d Dept 2009]; Luu v Paskowski, 57 AD3d 856 [2d Dept 2008]).
In support of the motion, the Defendants submit the affirmation of Dr. Maura Cosetti, a board-certified Otolaryngologist, who opined within a reasonable degree of medical certainty that the Defendants' care and treatment did not deviate from the standard of medical care and proximately cause Plaintiff's sudden hearing loss, nor did any alleged act or omission related to that care and treatment, exacerbate, or make permanent his SNHL or the severity thereof. 
She emphasizes that the standard of care applicable to Plaintiff's care from January 16, 2019 to January 25, 2019, is that established in the United States ("US") based on the location and community in which Plaintiff received the care at issue. Dr. Cossetti notes that Plaintiff's care and treatment in Vietnam (01/28/2019 to 02/02/2019) is not the standard of care for treatment of SNHL in the US. Citing prevailing clinical practice in the US, Dr. Cosetti opines that Sudden SNHL, in general, is attributable to pathology at the level of the inner ear, the nerve [*4]of hearing, or the brain, or a combination thereof. According to Dr. Cosetti, Sudden SNHL may be caused by trauma or an infection/virus but it also without a known cause, and not a deviation from the standard of care in the treatment rendered by the Defendants in this matter. She also opines that the standard of care for SNHL treatment in the US is determined based on peer-review articles, along with consideration of clinical practice guidelines. In this regard, she cites The American Academy of Otolaryngology - Head and Neck Surgery published Clinical Practice Guidelines for Sudden Hearing Loss in March 2012, and an update in August 2019, which she states are directly applicable to the Defendants' care and treatment of Plaintiff. She indicates that these guidelines are published every 10 years and represent the most up to date accumulation of information from peer-reviewed articles over a five-to-ten-year period. She notes that "the academy guidelines are not practice rules and do not establish a standard of care. Standard of care does, however, take these clinical practice guidelines into account."
Dr. Cosetti opines that Sudden SNHL is not a medical emergency, and that the standard of care for the evaluation and the initiation of treatment is through a patient's history to identify risk factors, conducting a physical examination, and performing an audiogram. In the event an audiogram confirms Sudden SNHL, she indicates that treatment by oral steroids should be started in two weeks. Dr. Cosetti points to Plaintiff's first visit on January 16, 2019 where Dr. Reisacher took a full history and physical examination, and ruled out trauma and infection as the cause for Plaintiff's complaints, consistent with the standard of care. Similarly, she opines that the use of the tuning fork test at the January 16th visit would not have allowed for earlier diagnosis and treatment of Sudden SNHL and therefore, was not a departure from the standard of care resulting in proximately causing Plaintiff's permanent SNHL. According to Dr. Cosetti, the use of a tuning fork, which tests only a single frequency of sound, can supplement a patient's hearing loss but is not a diagnostic of the type or range of hearing loss, and thus, cannot replace an audiogram in the evaluation and diagnosis of Sudden SNHL.
Based on the record, Dr. Cosetti opines that Dr. Reisacher appropriately did not prescribe any treatment, including the prescribing of steroids or a tuning fork test for Plaintiff's complaints of hearing loss at the time of his first visit, since he did not know the cause of the hearing loss, and the audiogram and diagnosis was outstanding. She opines that Dr. Reisacher complied with the standard of care by performing the audiogram on January 25, 2019, which confirmed severe to profound left sided SNHL. With this diagnosis, Dr. Cosetti notes that Dr. Reisacher informed Plaintiff that even with treatment, recovery from a severe to profound hearing loss is difficult. She opines that oral steroids were properly recommended by Dr. Reisacher as the common first line treatment, and that Dr. Reisacher prescribed treatment of oral steroids was within 10 days from the onset of Plaintiff's symptoms in accordance with the 14-day recommendation of the clinical practice guidelines. She notes that the clinical practice guidelines are silent as to a recommended dose for the first line treatment with oral steroids and opines that a 12-day course of oral steroids at 40 mg was an appropriate exercise of Dr. Reisacher's medical judgment, which did not affect or change Plaintiff's outcome. Significantly, Dr. Cosetti indicates that Dr. Reisacher was not given the opportunity to recommend other treatment modalities, such as a Brain MRI or hyperbaric oxygen since Plaintiff travelled to Vietnam on January 26th and did not return to Defendant's care after January 25th. Accordingly, Dr. Cosetti opines that Dr. Reisacher did not depart from the standard of care by failing to treat the SNHL where Plaintiff electively left Dr. Reisacher's care in a non-emergent circumstance.
Based on the affirmation of Dr. Cosetti, the Court finds that the Defendants have [*5]established prima facie entitlement to judgment as a matter of law that the care and treatment redndered to Plaintiff did not cause, exacerbate, or make permanent Plaintiff's sudden onset of SNHL.
In opposition, Plaintiff cross-moves for summary judgment on the issue of causation and liability and proffers the expert affidavits of Dr. John R. Bogdasarian, and Dr. John F. Biedlingmaier, both of which are board-certified Otolaryngologists.
Dr. Bogdasarian conducted Independent Medical Examinations of Mr. Bui on July 20, 2021 and August 23, 2022, respectively, both of which confirmed a diagnosis of Sudden SNHL and tinnitus in the left ear. Mr. Bui was informed that additional improvement in the hearing of his left ear is unlikely. He was also advised that with aging, hearing in the left ear may worsen.
Dr. Biedlingmaier concurs with Dr. Bogdasarian's diagnosis and indicates that Plaintiff presented to Dr. Reisacher with a history of left sided SNHL less than 24 hours after the onset of symptoms. However, unlike Dr. Cosetti, Dr. Biedlingmaier opines that Mr. Bui presented with an otologic emergency which required emergent care by Dr. Reisacher within 72 hours of presentation of symptoms. According to Dr. Biedlingmaier, sudden hearing loss is akin to a "stroke" of the inner ear since the sole blood supply to the ear's inner artery becomes blocked preventing oxygenation, with cell death progressing over the next 72 hours.He opines that Dr. Reisacher was in a unique position to start care withing the first 24 hours of consulting with Plaintiff and prior to the 72-hour time frame before cell death. Contrary to Dr. Cosetti's interpretation of the clinical practice guidelines, he opines that pursuant to the standard of care set forth in the guidelines Mr. Bui should have received an audiogram within two weeks of presentation of symptoms or at minimum, and a tuning fork test to determine whether the hearing loss is conductive or sensory neural.
Dr. Biedlingmaier interpretation of the of the guidelines also differs as to the timing of the use of oral steroids. Contrary to Dr. Cosetti, Dr. Biedlingmaier opines that there was no need to wait for a confirmatory audiogram and Dr. Reisacher should have started steroid therapy since an audiogram was not possible on January 16th and the results from a tuning fork may be inclusive. Instead, he indicates that the guidelines state not to wait and cites several medical journals, he asserts that the prescribed steroid dosage was insufficient for the severity of the plaintiff's hearing loss. Specifically, Dr. Biedlingmaier opines that the steroidal dosing schedule prescribed by Dr. Reisacher did not conform to the standard of care and indicates that Mr. Bui should have been implemented a prednisone schedule starting at a high dose of 60 mg and tapering off to a smaller dose. Both experts directly contradict each other on this issue. Dr. Biedlingmaier opines that Dr. Reisacher prescribed dose of 40 mg, is an underdose, while Dr. Cosetti states that 40 mg is "not so much lower" than 60 mg. He further opines that if there was a concern about the complications of steroids then the use of direct ear injections could have avoided potential side effects of oral steroids, while Dr. Cosetti finds that there is no clear statistical advantage or change in outcome in cases of profound hearing loss with the use of steroid injections.
Finally, Dr. Bogdasarian opines that Dr. Reisacher should have discussed hyperbaric oxygen therapy as a potential treatment option, especially considering the plaintiff's age and severe hearing loss. Dr. Bogdasarian, relying on the 2012 and 2019 American Academy of Otolaryngology guidelines, suggests that younger patients with the worst prognosis do better with hyperbaric oxygen and had the plaintiff been aware of this option, he may have had reason to alter his travel plans to Vietnam.
The Court finds that the respective expert affirmations submitted by the Plaintiff and Defendants are of equal strength and supported by the facts in the record, addressing the essential allegations in the bill of particulars and setting forth their opinions with a reasonable degree of medical certainty (see Roques, 73 AD3d 204). Thus, although Defendants met their initial burden of establishing their prima facie entitlement to summary judgment, the affidavit of Dr. Bogdasarian raises triable issues of fact regarding whether Dr. Reisacher deviated from the standard of care to treat Mr. Bui's Sudden SNHL and whether these deviations resulted in a permanent hearing loss and tinnitus to Mr. Bui, thereby rebutting the Defendants' prima facie showing (Alvarez, 68 NY2d at 324; Mignoli v Oyugi, 82 AD3d 443 [1st Dept 2011]; Polanco v Reed, 105 AD3d 438 [1st Dept 2013]). It is well established that "[s]ummary judgment is not appropriate ... [when] the parties [submit] conflicting medical expert opinions because [s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury" (Cummings v Brooklyn Hosp. Ctr., 147 AD3d 902, 904 [2d Dept 2017], quoting DiGeronimo v Fuchs, 101 AD3d 933 [2d Dept 2012]; see Elmes v Yelon, 140 AD3d 1009 [2d Dept 2016]; Leto v Feld, 131 AD3d 590 [2d Dept 2015]).
Accordingly, summary judgment is not warranted as to Dr. Reisacher. As to Plaintiff's cause of action sounding in vicarious liability against Defendant Cornell, summary judgment is also denied since triable issues of fact exist as to Dr. Reisacher's treatment and care of Mr. Bui. It is well settled that as a hospital furnishing doctors, staff and facilities for medical services, Cornell is under a duty to perform such services and is liable for the negligent performance of those services by the doctors and staff it hired and furnished (see Klippel v Rubinstein, 300 AD2d 448 [2d Dept 2002]). 
The Court shall not consider Plaintiff's cross motion on the issue of liability and causation based on the triable issues of fact that have been raised.
Finally, the Court notes that the parties' submissions do not address the lack of informed consent cause of action, therefore, Defendants' motion is denied as to this claim.
Based on the foregoing, it is hereby
ORDERED, that the Defendants' motion for Summary Judgement is denied in its entirety; and it is further
ORDERED, that the Plaintiff's motion for Partial Summary Judgement is denied as moot; and it is further
ORDERED, that within twenty (20) days of entry of this order, the Defendants shall serve a copy of this order with notice of entry upon the Clerk of the Court (60 Centre Street, Room 141B) and the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further
ORDERED, that service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible a the "E-Filing" page on the court's website at the address 
www.nycourts.gov/supctmanh).
This constitutes the decision and order of the Court.
DATE December 30, 2024
KATHY J. KING, J.S.C.

Footnotes

Footnote 1:The Court shall not consider Plaintiff's Second Supplemental Affidavit in opposition to Defendants' motion and in support of Plaintiff's cross-motion (see Lazar v Nico Indus., Inc., 128 AD2d 408, 409-410 [1st Dept 1987]). Significantly, Plaintiff is not permitted, by way of a reply affidavit, to shift the burden to demonstrate a material issue of fact when Defendants have neither the obligation nor opportunity to respond absent express leave of Court (see CPLR 2214 [c]; see also Lazar, 128 AD2d 408; Matter of Kennelly v Mobius Realty Holdings LLC, 33 AD3d 380 [1st Dept 2006]; Dannasch v Bifulco, 184 AD2d 415 [1st Dept 1992]).