**Tracey-Gosine v Pleninger**

2025 NY Slip Op 31730(U)

May 12, 2025

Supreme Court, New York County

Docket Number: Index No. 805211/2022

Judge: Kathy J. King

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. KATHY J. KING                             PART                    06

*Justice*

---------------------------------------------------------------------------X

Dillian Tracey-Gosine as the Administratrix of the Estate of VERNON P. GOSINE, deceased, and DILLIAN TRACEY-GOSINE, Individually,

                            Plaintiffs,

                         - v -

PERRIN A. PLENINGER, DANIEL GRATCH, and NEW YORK CITY HEALTH AND HOSPITALS CORPORATION d/b/a BELLEVUE HOSPITAL CENTER,

                            Defendants.

---------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 805211/2022 |
| MOTION DATE | 08/01/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 87

were read on this motion to/for                    JUDGMENT - SUMMARY         .

      Upon the foregoing papers, and after oral argument, Defendant New York City Health and Hospitals Corporation d/b/a Bellevue Hospital Center's ("HHC" or "Defendant") motion for Summary Judgment, seeking to dismiss the case, is denied as set forth herein.[1]

      Plaintiff Dillian Tracey-Gosine commenced the underlying action on behalf of her husband, Vernon P. Gosine ("decedent"), against Defendant, alleging causes of action sounding in medical malpractice.[2] Plaintiff sues derivatively for loss of consortium arising from the alleged causes of action.

---

[1] Plaintiff executed Stipulations of discontinuance dated June 25, 2024, as to Defendants Perrin A. Pleninger, MD, and Daniel Gratch, MD, which dismisses the complaint against them with prejudice.

[2] At oral argument, the Plaintiff elected to withdraw all claims predicated on Negligent Hiring and Retention and Lack of Informed Consent.

## BACKGROUND

This action arises from Defendant's alleged negligent medical care of decedent, a 45-year-old high-risk stroke patient, during a two-month period from April to May 2021. Plaintiff contends that Defendant proximately caused the decedent's prolonged and dangerously elevated blood pressure, a cerebral vascular abnormality, and uninvestigated new neurological deficits. These conditions purportedly culminated in a debilitating hemorrhagic stroke with midline shift on May 26, 2021, mere hours after the decedent's discharge from Defendant's designated stroke center. The decedent subsequently died in December 2021.

Defendant now moves for summary judgment pursuant to CPLR 3212, dismissing the entire Complaint and directing entry of judgment in favor of the Defendant.

Plaintiff opposes the requested relief.

## DISCUSSION

A defendant physician moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by establishing the absence of a triable issue of fact as to his or her alleged departure from accepted standards of medical practice, or by establishing that the plaintiff was not injured by such treatment (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Frye v Montefiore Med. Ctr.*, 70 AD3d 15 [1st Dept 2009]; *McGuigan v Centereach Mgt. Group, Inc.*, 94 AD3d 955 [2d Dept 2012]; *Sharp v Weber*, 77 AD3d 812 [2d Dept 2010]; *see generally Stukas v Streiter*, 83 AD3d 18 [2d Dept 2011]). To satisfy this burden, a defendant must present expert opinion testimony that is supported by the facts in the record, addresses the essential allegations in the complaint or the bill of particulars, and is detailed, specific, and factual in nature (*see Roques v Noble*, 73 AD3d 204, 206 [1st Dept 2010]; *Joyner-Pack v Sykes*, 54 AD3d 727 [2d Dept 2008]; *Koi Hou Chan v Yeung*, 66 AD3d 642 [2d Dept 2009]; *Jones v Ricciardelli*, 40 AD3d

805211/2022   TRACEY-GOSINE, DILLIAN vs. PLENINGER M.D., PERRIN A. ET AL                Page 2 of 6
Motion No.  001

2 of 6

[* 2]

935 [2d Dept 2007]). Furthermore, to satisfy his or her burden on a motion for summary judgment, a defendant must address and rebut specific allegations of malpractice set forth in the plaintiff's bill of particulars (*see Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d 1043 [2d Dept 2010]; *Grant v Hudson Val. Hosp. Ctr.*, 55 AD3d 874 [2d Dept 2008]; *Terranova v Finklea*, 45 AD3d 572 [2d Dept 2007]).

In support of their motion, Defendant submits the expert affirmation of Dr. Martin Zonenshayn ("Dr. Zonenshayn"), a board-certified Neurological Surgeon, who offers his opinion within a reasonable degree of medical certainty. Dr. Zonenshayn states that HHC adhered to the standard of care in its treatment of decedent and that any alleged damages did not result from any negligence on the part of Defendant. He specifically opines that the medical care provided to the decedent during his May 26, 2021 neurology clinic visit at HHC was proper and within the standard of care, and that neither Defendant's actions nor inactions caused or contributed to the alleged injuries.

Dr. Zonenshayn also affirms that the Defendant obtained a comprehensive medical history, including details of the decedent's prior stroke, and that the evaluation and examination on that date constituted good medical care consistent with the findings for a patient with a prior stroke who had not fully recovered. According to Dr. Zonenshayn, the neurological examination provided no indication of an active or imminent stroke, and isolated cognitive slowing for a week does not suggest a hemorrhagic stroke or impending intracranial hemorrhage without other significant symptoms. He further opines that Dr. Gratch, with Dr. Pleninger's input, developed an appropriate impression and plan, ordering necessary imaging and consultations. He also opines that Dr. Pleninger provided sufficient supervision within the standard of care for a resident's initial patient evaluation before consulting the attending physician. Dr. Zonenshayn deems the recommendation

805211/2022  TRACEY-GOSINE, DILLIAN vs. PLENINGER M.D., PERRIN A. ET AL       Page 3 of 6
Motion No. 001

[* 3]                                    3 of 6

for an outpatient MRI (to investigate the decedent's initial concern of MS) perfectly acceptable and states there was no need for STAT brain imaging, TPA administration, or emergency department presentation given the absence of acute symptoms. Finally, he attributes the decedent's large hemorrhagic stroke later that evening to his longstanding medical conditions, particularly uncontrolled hypertension and poorly controlled diabetes, both significant stroke risk factors.

Based on the expert affirmation provided by the Defendant, the Court finds that Defendant has met its prima facie burden of demonstrating that any care and treatment rendered to the decedent adhered to the applicable standard of care and did not proximately cause the injuries alleged by the Plaintiff. Once defendant establishes prima facie entitlement to judgment as a matter of law, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact by submitting an expert's affidavit or affirmation attesting to a departure from accepted medical practice and that such departures were a competent producing cause of the plaintiff's injuries (*see Roques,* 73 AD3d at 207; *Landry v Jakubowitz,* 68 AD3d 728 [2d Dept 2009]; *Luu v Paskowski,* 57 AD3d 856 [2d Dept 2008]).

In opposition, the Plaintiff offers the expert affirmation of Dr. Richard Lechtenberg ("Dr. Lechtenberg"), a board-certified Psychiatrist and Neurologist, who opines within a reasonable degree of medical certainty that on May 26, 2021, Defendant failed to urgently evaluate and treat the decedent's new signs and symptoms indicative of a potential emerging stroke, despite his significant and known stroke risk factors. Dr. Lechtenberg asserts that the Defendant repeatedly neglected clear warning signs, including elevated blood pressure, cognitive dysfunction, and abnormal imaging, and that a non-party physician deferred medication adjustments for the decedent's uncontrolled blood pressure without a specified timeframe. He contends that the standard of care mandated immediate neuroimaging like a head CT to rule out stroke or

805211/2022   TRACEY-GOSINE, DILLIAN vs. PLENINGER M.D., PERRIN A. ET AL          Page 4 of 6
Motion No.  001

4 of 6

hemorrhage for timely intervention, along with diligent blood pressure monitoring and ensuring adequate treatment of the decedent's unaddressed hypertension, cholesterol, and blood sugar. Dr. Lechtenberg further opines that Defendant failed to conduct an adequate examination, follow up on concerning findings such as the noted new slow speech, and appreciate the decedent's high-risk profile, leading to a direct contribution to the stroke he suffered hours after discharge. According to Dr. Lechtenberg, the failure to adequately assess, diagnose, and treat during the critical period allowed the hemorrhagic stroke to worsen, causing substantial brain damage and systemic complications, including those leading to the decedent's fatal outcome.

Based on Plaintiff's submission and expert affirmation, the Court finds that Plaintiff raises issues of fact, rebutting the Defendant's prima facie entitlement to summary judgment (*see Johnson v St. Barnabas Hosp.*, 52 AD3d 286 [1st Dept 2008], appeal denied 11 NY3d 705 [2008]; *Landau v Rappaport*, 306 AD2d 446 [2d Dept 2003]; *Nabozny v Cappelletti*, 267 AD2d 623 [3d Dept 1999]; *Johnson v Jacobowitz*, 65 AD3d 610 [2d Dept 2009]). "Summary judgment is not appropriate . . . [when] the parties [submit] conflicting medical expert opinions because [s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury" (*see Cummings v Brooklyn Hosp. Ctr.*, 147 AD3d 902, 904 [2d Dept 2017], quoting *DiGeronimo v Fuchs*, 101 AD3d 933 [2d Dept 2012] [internal quotation marks omitted]; *see also Elmes v Yelon*, 140 AD3d 1009 [2d Dept 2016]; *Leto v Feld*, 131 AD3d 590 [2d Dept 2015]). "[C]onflicting expert opinions raise credibility issues which are to be resolved by the factfinder" or factfinders (*see Stucchio v Bikvan*, 155 AD3d 666, 667 [2017]).

Accordingly, it is hereby

**ORDERED,** that the Defendant New York City Health and Hospitals Corporation d/b/a Bellevue Hospital Center's motion is denied in its entirety; and it is further

805211/2022   TRACEY-GOSINE, DILLIAN vs. PLENINGER M.D., PERRIN A. ET AL
Motion No.  001

Page 5 of 6

**ORDERED** that within twenty (20) days of entry of this order, counsel for Plaintiff shall serve a copy of this order with notice of entry upon the Defendant; and it is further

**ORDERED** that the parties are to appear for an in-person settlement conference on November 11, 2025, at 10:00 am, in 60 Centre Street, Courtroom 351, New York, NY 10007.

This constitutes the decision and order of the Court.

| 5/12/2025 | | | | |
|-----------|---|---|---|---|
| **DATE** | | | **KATHY J. KING, J.S.C.** | |
| CHECK ONE: | ☐ CASE DISPOSED | | X NON-FINAL DISPOSITION | |
| | ☐ GRANTED | X DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**805211/2022   TRACEY-GOSINE, DILLIAN vs. PLENINGER M.D., PERRIN A. ET AL**                                                                 **Page 6 of 6**
**Motion No.  001**