■ YVONNE THURSTON, Respondent, v INTERFAITH MEDICAL CENTER et al., Appellants, et al., Defendants. [887 NYS2d 655]—

In an action, inter alia, to recover damages for medical malpractice and wrongful death, the defendants Interfaith Medical Center and Dinker Rai separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Kings County (Jackson, J.), dated September 3, 2008, as denied their separate motions for summary judgment dismissing the complaint insofar as asserted against them.

Ordered that the order is modified, on the law, by deleting the provision thereof denying the motion of the defendant Dinker Rai for summary judgment dismissing the complaint insofar as asserted against him, and substituting therefor a provision granting that motion; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the plaintiff payable by the defendant Interfaith Medical Center, and one bill of costs to the defendant Dinker Rai payable by the plaintiff.

Shortly after 8:15 A.M. on the morning of July 15, 2002, the plaintiff's decedent, Alan Bittleman, a 50-year-old man with end-stage renal disease, arrived at the hospital of the defendant Interfaith Medical Center (hereinafter Interfaith), where he was scheduled to undergo a thrombectomy, a surgical procedure to repair a clotted arteriovenous graft. The surgery was to be performed by the defendant Dr. Dinker Rai. After blood was drawn in presurgical testing, Bittleman was taken for a chest X ray. Thereafter, he was brought to the ambulatory surgery waiting room on the fifth floor of the hospital. It is undisputed that, at the time Bittleman was taken to the waiting room, Dr. Rai was in surgery with another patient. At 11:00 A.M., while Dr. Rai was still in surgery with the other patient, the results of Bittleman's blood test were received by hospital staff, showing a dangerously high level of potassium. Dr. Rai was still in surgery when he was informed of Bittleman's high potassium level and also was told that Bittleman was no longer in the waiting room and could not be located. At Dr. Rai's direction, a search was conducted but, by the time Bittleman was found, he had collapsed on the first floor, near the hospital's main entrance. Efforts to revive him were unsuccessful.

The plaintiff, the administratrix of Bittleman's estate, commenced this action against Dr. Rai, Interfaith, and others, alleging medical malpractice and wrongful death. After discovery was completed, various defendants, including Dr. Rai and Interfaith, moved for summary judgment dismissing the complaint insofar as asserted against them. The Supreme Court denied the motions of Dr. Rai and Interfaith, finding that there were triable issues of fact. We modify.

A defendant physician moving for summary judgment in a medical malpractice action has the initial burden of establishing, prima facie, either the absence of any departure from good and accepted medical practice or that any departure was not the proximate cause of the alleged injuries (*see Larsen v Loychusuk*, 55 AD3d 560, 561 [2008]; *Sandmann v Shapiro*, 53 AD3d 537 [2008]). If the defendant satisfies that burden, the plaintiff, in opposition, must submit a physician's affidavit attesting to the defendant's departure from accepted practice and that the departure was a competent producing cause of the injury (*see Flanagan v Catskill Regional Med. Ctr.*, 65 AD3d 563, 565 [2009]; *Rebozo v Wilen*, 41 AD3d 457, 458 [2007]).

Here, Dr. Rai established his prima facie entitlement to judgment as a matter of law through evidence that he did not depart from good and accepted standards of care with respect to Bittleman, and that nothing he did or failed to do was a competent producing cause of Bittleman's injuries and death. In opposition, the plaintiff failed to raise a triable issue of fact. Among other things, there is no evidence that Dr. Rai was informed of the dangerously high potassium readings before Bittleman's whereabouts became unknown. Without such evidence, Dr. Rai's actions could not have been a proximate cause of Bittleman's injuries and death.

By contrast, the Supreme Court properly denied Interfaith's motion for summary judgment dismissing the complaint insofar as asserted against it. Contrary to Interfaith's contention, the plaintiff's claims sounded in medical malpractice inasmuch they challenged, among other things, Interfaith's assessment of Bittleman's supervisory and treatment needs (*see Scott v Uljanov*, 74 NY2d 673, 675 [1989]) and bore a substantial relationship to the rendition of medical treatment to him (*see D'Elia v Menorah Home & Hosp. for the Aged & Infirm*, 51 AD3d 848, 851 [2008]). Accordingly, it was incumbent upon Interfaith to establish, prima facie, that its treatment of Bittleman did not depart from good and accepted standards of care or that any departure was not a proximate cause of the plaintiff's injuries (*see Vera v Soohoo*, 41 AD3d 586, 588 [2007]). Interfaith failed

to make such a showing in view of evidence that it failed to attend to Bittleman while he was in the surgical waiting room and to monitor his condition and his whereabouts as he awaited surgery. Consequently, Interfaith's motion was properly denied without regard to the sufficiency of the papers submitted in opposition (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Fisher, J.P., Covello, Dickerson and Lott, JJ., concur.