■ AMILDA AGOSTO, as Administratrix of the Estate of CECILIA ROSADO Rodriguez, Deceased, Respondent, v OHANNES A. NERCESSIAN, Appellant, et al., Defendants. [3 NYS3d 328]—

Order, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered July 11, 2013, which, to the extent appealed from, upon renewal, denied defendant Ohannes Nercessian's motion for summary judgment dismissing the complaint and cross claims as against him, unanimously affirmed, without costs. Appeal from order, same court and Justice, entered November 26, 2012, unanimously dismissed, without costs, as superseded by the appeal from the July 11, 2013 order.

On February 9, 2007, decedent underwent a total knee replacement performed by defendant Dr. Nercessian, an ortho-

pedic surgeon. Post-operatively, defendant issued orders including, inter alia, the administration of 10 mg of Lisinopril daily by mouth and 25 mg of Hydrocholorthiasize by mouth, as well as oxycodone for pain.

On February 10, 2007, the day following surgery, decedent complained of stomach pain and constipation to the hospital staff. During his morning visit, Dr. Nercessian advised decedent that he was leaving for an orthopedic conference in San Diego, and purported to have left her in the care of Dr. Howard A. Kiernan, another attending orthopedist at the hospital. It is undisputed that neither Dr. Kiernan, nor any other attending physician, saw decedent prior to discharge.

On February 10, 2007, decedent was given oxycodone pursuant to the standing orders issued by Dr. Nercessian. At 2:00 a.m. the next morning, decedent was given Zofran for her complaints of nausea. Later that morning, she was administered an enema in response to gastrointestinal complaints. Throughout, decedent continued to complain to hospital personnel that her "stomach hurt[ ]."

During the afternoon of February 11, 2007, decedent continued to complain of stomach pain, bloating and constipation and was given milk of magnesia and numerous suppositories. A distended abdomen was twice noted.

On February 12, 2007, decedent complained of stomach pain, abdominal bloating, constipation, nausea and vomiting. She ran a fever of 102.8, and became tachycardic.

On February 13, 2007, decedent was still running a fever and complaining of stomach pain, abdominal bloating, constipation, nausea and vomiting. Nonetheless, she was discharged from the hospital at approximately 3:45, without being first examined by an attending physician. Dr. Nercessian electronically signed the discharge papers, which list him as "attending physician."

On February 14, 2007, at 6:30 a.m., 15 hours post-discharge, decedent was found face down, dead, on her bedroom floor.

The motion court, upon renewal, denied Dr. Nercessian's motion for summary judgment, finding triable issues of fact as to whether decedent was properly transferred to the care of another physician on February 10, 2007, and whether Dr. Nercessian's postoperative care of decedent until the time he left for the conference was in conformity with good and accepted medical practice. We agree, and now affirm.

A defendant in a medical malpractice action establishes prima facie entitlement to summary judgment when he or she establishes that in treating the plaintiff he or she did not depart

from good and accepted medical practice or that any such departure was not the proximate cause of the plaintiff's alleged injuries (*see Thurston v Interfaith Med. Ctr.*, 66 AD3d 999 [2d Dept 2009]). Once a defendant doctor meets his or her burden, the plaintiff must rebut defendant's prima facie showing via medical evidence attesting that the defendant departed from accepted medical practice and that such departure was a proximate cause of the injuries alleged (*see id.*).

Plaintiff raises triable issues of fact as to whether Dr. Nercessian departed from accepted medical practice in abandoning the decedent and failing to ensure adequate coverage during his absence. Dr. Kiernan, to whom care was purportedly transferred, acknowledged that he made no notes in the chart, and did not personally treat decedent during her hospital stay. Although he maintained that he was responsible for supervising the residents, he answered no queries concerning the decedent, nor did he modify or change any of the orders that had been issued by Dr. Nercessian. Dr. Nercessian, not Dr. Kiernan, is listed as the attending physician for decedent for the entirety of her admission. Dr. Nercessian, not Dr. Kiernan, is listed on the discharge papers as the attending physician and electronically signed the discharge order. The record contains no affirmation from the hospital or an expert concerning the propriety of the alleged oral transfer of care from Dr. Nercessian to Dr. Kiernan. Indeed, Dr. Nercessian's statement that "decedent's care was entrusted to [the] New York Presbyterian staff," contradicts his argument that care was entrusted to Dr. Kiernan, as the record contains an affidavit from a hospital administrator stating, inter alia, that Dr. Kiernan was not employed by the hospital. The fact that Dr. Kiernan surfaced after expiration of the statute of limitations further undermines the assertion that he assumed decedent's care. Dr. Nercessian asserts that plaintiff became aware of the identity of Dr. Kiernan during defendant's EBT; however, Dr. Nercessian's EBT took place after the statute of limitations had already expired. This case is distinguishable from *Brown v Bauman* (42 AD3d 390 [1st Dept 2007]), in which the defendant doctor confirmed, via telephone, than an attending physician was providing care to his patient pending his arrival.

Plaintiff also raises triable issues of fact as to whether Dr. Nercessian's postoperative treatment of decedent deviated from good and accepted medical practice. Plaintiff's expert opined, to a reasonable degree of medical certainty, that the failure to order either a gastroenterology or cardiology consultation constituted a departure from the standard of care. The expert opined

that it was departure to fail to order radiological studies and/or endoscopies of decedent's bowel, and a departure to fail to develop a differential diagnosis for decedent's symptoms which included colonic ileus, blockage and/or bowel ischemia. Plaintiff's expert also opined that it was a departure to continue decedent's medications without any further parameters, and to order a daily intake diet of 1,800 calories in the presence of abdominal pain and distension. He opined that decedent's blood pressure medications were a substantial factor in reducing the blood flow to her cecum and terminal ileum leading to bowel ischemia. Plaintiff's expert further opined that it was departure to discharge decedent without an attending physician first conducting a predischarge examination. The expert opined that in light of decedent's symptoms at the time, i.e., fever, abdominal pain, and bloating, she ought not to have been discharged. Concur—Mazzarelli, J.P., DeGrasse, Manzanet-Daniels, Feinman and Gische, JJ.