Carey v Singer (2025 NY Slip Op 50352(U))

[*1]

Carey v Singer

2025 NY Slip Op 50352(U)

Decided on March 20, 2025

Supreme Court, New York County

King, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 20, 2025
Supreme Court, New York County

Phoebe McCarthy Carey, and Donald Carey, Plaintiffs,

against
Samuel Singer, M.D., MEMORIAL HOSPITAL FOR CANCER AND ALLIED DISEASES, and MEMORIAL SLOAN-KETTERING CANCER CENTER, Defendants.

Index No. 805054/2021

Plaintiffs' Counsel: Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf, 80 Pine St Fl 34, New York, NY 10005
Defendants' Counsel: DOPF, P.C., 112 West 34th Street Suite 1555, NY, NY 10120

Kathy J. King, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 80, 81, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94 were read on this motion to/for PARTIAL SUMMARY JUDGMENT.
Upon the foregoing papers, Motion Seq. Nos. 002 and 003 are consolidated for purposes of disposition.
Defendants Samuel Singer (hereinafter "Dr. Singer"), and Memorial Hospital for Cancer and Allied Diseases (hereinafter "Memorial Hospital") (collectively hereinafter "Defendants") move pursuant to CPLR 3212, for an order:
1. Granting partial summary judgment as a matter of law and dismissing the following claims in Plaintiff Phoebe McCarthy Carey's complaint, sounding in medical malpractice (Mot. [*2]Seq. No. 2):[FN1]
 
(i) Defendants' alleged delay in offering Genetic Testing;
(ii) Defendants' alleged failure to conduct early detection testing of her Li Fraumeni Syndrome (hereinafter "LFS");
(iii) Noneconomic damages for a child born with TP53 gene mutation;
(iv) "Pain and suffering" and special damages resulting from alleged delayed breast cancer diagnosis and treatment;
(v) "Substantial loss of income" for having to care and provide treatment for her infant;
(vi) Lack of informed consent;
(vii) Past babysitting expenses; and
(viii) Loss of consortium on behalf of her spouse Donald Carey;
2. Granting partial summary judgment as a matter of law and dismissing Plaintiffs' claim
For "[f]uture expenses including . . . D.C.'s lifetime cost of cancer screening and ultimate cost of cancer treatment, should such occur" (Mot. Seq. No. 3); and
3. Directing Plaintiffs to serve an Amended Complaint and Amended Verified Bill of Particulars omitting the dismissed claims.
Plaintiffs opposes both motions.
SUMMARY JUDGMENT DISMISSAL AS A MATTER OF LAW
As a threshold matter, the Court dismisses the following causes of actions/claims as a matter of law:
1. Lack of Informed Consent Cause of Action
It is well settled that "[t]he right of action to recover for medical, dental or podiatric malpractice based on a lack of informed consent is limited to those cases involving either (a) nonemergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body" (Public Health Law §2805-d [2]). Here, Plaintiffs' bill of particulars demonstrates that none of the allegations involve any injury arising out of alleged failures to warn, advise, discuss, appreciate, or recommend a medical procedure, or a procedure involving an invasion the body. Thus, Plaintiffs have not established a cause of action for lack of informed consent (see Hernandez v The Children's Hosp. at Montefiore Med. Ctr. [NY Sup Ct, Bronx County 2018]; see also Janeczko v Russell, 46 AD3d 324 [1st Dept 2007]).
2. Noneconomic Damages Stemming from Plaintiff Infant's TPS53 Mutation and "Future Expenses [Including] . . . D.C.'S Lifetime Cost of Cancer Screening and Ultimate Cost of Cancer Treatment, If Such Occurs"
It is well settled that a child has no cause of action for the fact of their birth with a genetic defect, and the parents' claims for emotional distress and other noneconomic damages, predicated solely on their status as parents of a child with such a mutation, are without legal [*3]basis and must be dismissed (see Becker v. Schwartz, 46 NY2d 401 [1978]). Similarly, the Court also finds that Plaintiffs' claim for "future expenses [including] . . . D.C.'s lifetime cost of cancer screening and ultimate cost of cancer treatment, if such occurs," are unsubstantiated and there is neither a legal basis, legally cognizable right, nor authority provided by Plaintiff (see Bani-Esraili v Lerman, 69 NY2d 807 [1987]; Dutra Group v Batterton, 588 US 358 [2019]; Simon v Royal Bus. Funds Corp., 34 AD2d 758 [1st Dept 1970], affd 29 NY2d 692 [1971]).
3. Plaintiffs' Claim for Substantial Loss of Income for Caring and Providing Treatment for Their Infant
The case law has consistently held that a Defendant does not owe a duty of care to Mrs. McCarthy Carey's infant and/or spouse. "Absent a duty of care, there is no breach and no liability . . . " (see Edwards v. Mercy Home for Children and Adults, Inc., 303 AD2d 543 [2d Dept 2003]; DeCintio v. Lawrence Hosp., 299 AD2d 165 [1st Dept 2002] [holding that a plaintiff cannot recover for emotional distress and lost earnings from witnessing another's injury or death due to negligence, regardless of their relationship, unless the plaintiff was in the zone of danger or the defendant owed them an independent duty]).
SUMMARY JUDGMENT DISMISSAL OF PLAINTIFFS'
CLAIMS SOUNDING IN MEDICAL MALPRACTICE
The Court shall now address the branch of Defendants' motion seeking summary judgment for Plaintiffs' medical malpractice cause of action.
"To sustain a cause of action for medical malpractice, a plaintiff must prove two essential elements: (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of plaintiff's injury" (Frye v Montefiore Med. Ctr., 70 AD3d 15, 24 [1st Dept 2009]; see Roques v Noble, 73 AD3d 204 [1st Dept 2010]; Elias v Bash, 54 AD3d 354 [2d Dept 2008]; DeFilippo v New York Downtown Hosp., 10 AD3d 521 [1st Dept 2004]). In the case at bar, Plaintiff, Phoebe McCarthy Carey, alleges that on or about August 28, 2018 through on or about June 30, 2020, Defendants were negligent and careless in failing to: advise the Plaintiff of the need for genetic testing and evaluations, including those that determine the existence of the TP53 gene mutation; warn the plaintiff of the risk of proceeding with cancer treatment without first conducting such testing; and discuss the risks to the Plaintiffs' offspring of proceeding with cancer treatment without first conducting such genetic testing. As a result, Mrs. McCarthy Carey claims to have sustained a delay in diagnosis of the TP53 gene mutation also known as LFS that allegedly led, inter alia, to the prevention of undergoing screening and/or preventative measures that follow a diagnosis of the TP53 gene mutation leading to the alleged injuries. 
A defendant doctor establishes prima facie entitlement to summary judgment when he/she establishes that in treating the plaintiff there was no departure from good and accepted medical practice or that any departure was not the proximate cause of the injuries alleged (Thurston v Interfaith Med. Ctr., 66 AD3d 999, 1001 [2009]; Myers v Ferrara, 56 AD3d 78, 83 [2008]; Germaine v Yu, 49 AD3d 685 [2008]; Rebozo v Wilen, 41 AD3d 457, 458 [2007]; Williams v Sahay, 12 AD3d 366, 368 [2004]). To satisfy this burden, a defendant physician must present expert opinion testimony that is supported by the facts in the record, addresses the essential allegations in the complaint or the bill of particulars, and is detailed, specific, and [*4]factual in nature (see Roques v Noble, 73 AD3d 204, 206 [1st Dept 2010]; Joyner-Pack v. Sykes, 54 AD3d 727 [2d Dept 2008]; Koi Hou Chan v Yeung, 66 AD3d 642 [2d Dept 2009]; Jones v Ricciardelli, 40 AD3d 935 [2d Dept 2007]). 
In support of their requested relief, Defendants submit the expert affidavits of Dr. Theodore N. Tsangaris (hereinafter "Dr. Tsangaris"), a board-certified surgeon, who opines solely as to Mrs. Carey's breast cancer diagnosis, treatment, treatment response, and prognosis, and Dr. Joshua D. Schiffman ("hereinafter Dr. Schiffman"), a board-certified Pediatrician and Pediatric Hematologist-Oncologist, who opines as to Plaintiff's claims relating to brain cancer and melanoma. Both experts opine to a reasonable degree of medical certainty. 
Specifically, Dr. Tsangaris opines that the considerable presence of DCIC (ductal carcinoma in situ) in the breast strongly suggests that the cancer was present by 2018 or earlier. Specifically, Dr. Tsangaris opines that there is no merit to Plaintiffs' allegation that Ms. McCarthy Carey's breast cancer could have been "prevented" if Genetic Testing had been ordered sooner by Dr. Singer or anyone else at Memorial Hospital. According to Dr. Tsangaris, an earlier detection of Mrs. McCarthy Carey's breast cancer would have led to the same treatment outcome and prognosis that occurred after the 2020 diagnosis of breast cancer, since her response to treatment resulted in a successful eradication of all detectable invasive cancer. Based on this result, he opines that Mrs. Carey's prognosis for remaining free of breast cancer is excellent. 
Additionally, Dr. Schiffman opines that "there is no merit to a claim that an alleged delay in the genetic testing that revealed [Mrs. McCarthy Carey's LFS] had any impact on the timing of, the development of, the evaluation for, the treatment for, the treatment outcome, or the disease prognosis for [her] brain cancer . . ." since her brain cancer was diagnosed nearly two years after genetic testing had been conducted, which revealed her LFS. He notes that prior MRIs showed no tumor.
Dr. Schiffman further opines that cancer surveillance performed by Defendants included total body MRI imaging upon learning of Ms. McCarthy Carey's LFS in November 2020. When the LFS was identified via genetic testing, Mrs. McCarthy Carey was also treated at Memorial Hospital on a course of dermatologic follow-up, prevention counseling, and skin cancer screening upon her diagnosis of LFS. The diagnosis of melanoma was made years later and after many negative screens for melanoma, including skin exams conducted by dermatologists.
Defendants' expert affidavits provide prima facie evidence that there was no delay in offering Mrs. McCarthy Carey genetic testing that resulted in her developing breast cancer, nor did any delay affect her subsequent treatment, prognosis, or the diagnosis and care of her brain cancer or melanoma.
Once the defendant makes prima facie showing, the burden shifts to the non-moving party to demonstrate, by admissible evidence, the existence of a material issue of fact that requires resolution at trial (see Zuckerman v City of New York, 49 NY2d 557, 558-59 [1980]). Here, Plaintiff, in opposition, submits the affirmation of a board-certified Neuro-Oncologist and Pediatric Hematologist and Oncologist (referred to as "Expert A"), together with an affirmation from a board-certified Surgical Oncologist (referred to as "Expert B").[FN2]

Expert A opined to a reasonable degree of medical certainty that if Ms. Carey had been [*5]tested and diagnosed with LFS in 2018, she would have undergone a proper surveillance program that accounted for her LFS and prior history of brain cancer. According to Expert A, such tests and diagnoses would have detected her more recent brain cancer earlier and thereby substantially increased the likelihood of a better outcome. In addition, Expert A opined that Ms. Carey likely had a brain tumor in August 2018 and, thus, "proper surveillance testing would have caught the tumor when it was smaller and more amenable to surgical debulking." As a result, Expert A opined that defendants' "failure to refer her to genetic testing in 2018 (including due to her prior history of brain cancer) deprived her of a substantial chance of treating or curing her brain cancer and a longer life span." Both experts opine that defendants' failure to refer Ms. Carey for genetic testing in 2018 was a proximate cause of her injuries because had Defendants timely performed the genetic testing and screening consistent with good and accepted practice, it is reasonably probable that Mrs. McCarthy Carey's injuries would be substantially less severe. Thus, they conclude that the delay deprived her of a substantial possibility of a better outcome.
The Court finds that both Expert A and Expert B raise triable issues of fact regarding alleged deviations and causation, thus, rebutting the Defendants' prima facie entitlement to summary judgment as a matter of law. "Summary judgment is not appropriate . . . [when] the parties [submit] conflicting medical expert opinions because [s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury" (Cummings v Brooklyn Hosp. Ctr., 147 AD3d 902, 904 [2d Dept 2017], quoting DiGeronimo v Fuchs, 101 AD3d 933 [2d Dept 2012] [internal quotation marks omitted]; see Elmes v Yelon, 140 AD3d 1009 [2d Dept 2016]; Leto v Feld, 131 AD3d 590 [2d Dept 2015]). Similarly, since Plaintiffs' cause of action for loss of consortium and extraordinary expenses for their infant child, are derivative of Plaintiffs' right to recover damages for any injuries sustained as a result of the Defendants' alleged malpractice, dismissal is precluded (see Liff v Schildkrout, 49 NY2d 622 [1980]).
The Court also finds that under the doctrine of respondeat superior, dismissal is not warranted against Memorial Hospital since Plaintiffs have raised triable issues of fact against Defendant Dr. Singer, as an employee of Memorial Hospital (see Sessa v Peconic Bay Medical Center, 200 AD3d 1085 [2d Dept 2021]; Klippel v Rubinstein, 300 AD2d 448 [2d Dept 2002]; Rivera v County of Suffolk, 290 AD2d 430 [2d Dept 2002]; Mduba v Benedictine Hosp., 52 AD2d 450 [3d Dept 1976]). 
Finally, Plaintiff has provided documentary proof in admissible form as to payment for babysitting services, which establishes a triable issue of fact as a matter of law. Defendants admittedly concede that absent documentary proof as to the cost of the nursing and any award for such past services would be speculative and unsupported by competent evidence (see Coniker v State, 2002 NY Slip Op 50603[U] [Ct Cl 2002]; Lane v Smith, 84 AD3d 746 [2d Dept 2011]). The Court notes, however, that Plaintiffs have not submitted any proof to recover for extraordinary expenses beyond those expenses incurred until the child reached the age of 21 (id.).
Based on the foregoing, it is hereby
ORDERED, that Defendants' motions for partial summary judgment (Mot. Seq. 2) is granted to the extent of dismissing Plaintiffs' 1) lack of informed consent cause of action; 2) noneconomic damages claim for a child born with TP53 gene mutation; and 3) substantial loss of income claim in caring and providing treatment for Plaintiffs' infant; and in all other respects Mot. Seq. 2 is denied; and it is further
ORDERED, that Defendants' partial summary judgment motion (Mot. Seq. 3) is granted [*6]to the extent of dismissing Plaintiff's claim for "[f]uture expenses [including] . . . D.C.'s lifetime cost of cancer screening and ultimate cost of cancer treatment, should such occur;" and it is further
ORDERED, that the Defendants are directed to serve a copy of this order upon the Plaintiffs by first class regular mail at their last known address within twenty (20) days of entry of this order; and it is further
ORDERED, that within twenty (20) days of entry of this order, counsel for Defendants shall serve a copy of this order with notice of entry upon all parties and the Clerk of the Court (60 Centre Street, Room 141B) and the Clerk of the General Clerk's Office (60 Centre Street, Room 119), who are directed to enter judgment in accordance with this order; and it is further
ORDERED, that service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible a the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh); and it is further
ORDERED, that the parties are directed to appear for a settlement conference on July 22, 2025, at 2:30 pm, at 60 Centre Street, Room #351, New York, NY.
This constitutes the Decision and Order of the Court.
DATE 3/20/25
KATHY J. KING, J.S.C.

Footnotes

Footnote 1: Plaintiffs have discontinued the lawsuit as to the Memorial Sloan-Kettering Cancer Center (see NYSCEF Document No. 3).

Footnote 2: Plaintiff has redacted the name of her experts pursuant to CPLR 3101(d).