[48 NYS3d 110]

TRANSIT FUNDING ASSOCIATES, LLC, et al., Respondents-Appellants, v CAPITAL ONE EQUIPMENT FINANCE CORP., Formerly Known as ALL POINTS CAPITAL CORP., Doing Business as CAPITAL ONE TAXI MEDALLION FINANCE, et al., Appellants-Respondents.

First Department, February 28, 2017

24

## APPEARANCES OF COUNSEL

*Skadden, Arps, Slate, Meagher & Flom LLP*, New York City (*Alexander C. Drylewski, George A. Zimmerman* and *Patrick G. Rideout* of counsel), for appellants-respondents.

*Molo Lamken LLP*, New York City (*Robert Kry, Steven F. Molo* and *Michelle J. Parthum* of counsel), for respondents-appellants.

## OPINION OF THE COURT

SAXE, J.

This appeal requires us to consider whether a loan agreement that gives the lender broad authority to deny "any" funding requests "in its sole and absolute discretion" and allows the lender to condition its approval "for any . . . reason" can be violated, or the covenant of good faith breached, by the lender's rejection during the term of the contract of all further funding requests, for its own business reasons. We conclude that the contract's language precludes holding the lender liable on either theory.

Plaintiff Transit Funding Associates, LLC (TFA), a financing company that loaned money to Chicago taxi owners and drivers for the purchase of taxi medallions, entered into a commercial loan agreement with defendant lender, Capital One Taxi Medallion Finance, under which Capital One agreed to fund a loan facility for plaintiff. From 2006 to 2009, before it entered into the credit facility with Capital One, TFA had worked with a local Chicago bank, Cole Taylor Bank, where it had a $20 million credit facility. In March 2009, Capital One allegedly induced Transit Funding to leave Cole Taylor and embark on a joint venture with it whereby TFA would generate business, handle collections, and perform back-office functions, while Capital One provided funding for the venture. The parties would share profits and losses, and TFA affiliates would guarantee TFA's obligations.

Initially, Capital One provided TFA with a $35 million credit line that allowed TFA to draw down advances as it made medallion loans. Over the years, Capital One increased the credit line in successive steps so that, by April 2012, it stood at $80 million. Accordingly, TFA expanded its business from 130 medallion loans to more than 750 medallion loans.

On April 6, 2012, Capital One and TFA entered into the loan agreement in question, which provided TFA with an $80 million credit line. The agreement provided that Capital One

would continue funding advances, as in section 2.1 (c), which provided that Capital One "will make Advances to [TFA] from time to time until the close of business on [the Termination Date] . . . in such sums as [TFA] may request." However, that general obligation of Capital One was substantially limited by section 2.1 (g) of the loan agreement, which gave Capital One the complete authority to decline to advance funds:

"Notwithstanding anything to the contrary contained herein, [Capital One] reserves the right to make or decline any request for an Advance in its sole and absolute discretion and may condition the availability of an Advance upon, among other things, (i) that no Default or Event of Default occurring hereunder or under any Loan Document exists and continues beyond the expiration of applicable notice and cure periods; or (ii) the maintenance of a satisfactory financial condition by [TFA] and all Guarantors; or (iii) for any other reason determined by [Capital One] in its sole and absolute discretion."

In connection with the loan agreement, Capital One and TFA entered into a "Revolving Advised Line of Credit Promissory Note" for the $80 million principal. Plaintiffs Patton Corrigan and Michael Levine, the principals and sole owners of TFA, along with various TFA affiliates, entered into written guaranties dated April 6, 2012, unconditionally and absolutely guaranteeing TFA's obligations to Capital One under the loan agreement.

In April 2013, Capital One began internal discussion of the possibility that it would abandon the joint venture and the Chicago medallion market. However, in reliance on assurances by Capital One representatives, on July 31, 2013, the parties renewed the credit facility under the loan agreement to July 1, 2014, with an automatic three-month extension to October 1, 2014.

However, before expiration of the loan agreement, Capital One abruptly began denying all loan advances, regardless of the creditworthiness or circumstances of particular medallion owners. In fact, on February 25, 2014, Capital One denied a request for $1.3 million to fund three loans, even though it had previously approved those loans. TFA later learned that Capital One had begun collaborating with the ride-sharing service Uber, a direct competitor to medallion taxi drivers. In particu-

lar, Capital One entered into a joint venture with Uber whereby Uber customers received a discount when they paid with their Capital One credit card, and new customers got two free rides up to $60.

In March 2014, TFA asked Capital One for permission to sell the 48 medallions that its affiliates had pledged as security, and offered to substitute all cash proceeds as security. Capital One refused, thereby preventing TFA from liquidating these assets at an opportune time.

It is plaintiffs' position that Capital One undermined TFA's ability to carry on its business, effectively destroying the Chicago medallion loan market by causing all similar funding to dry up, and destroyed TFA's collateral. Ultimately, TFA was effectively forced into liquidation. It began winding down its lending operations and used proceeds it received to pay back its loan facility.

Because the winding down process would take time, the parties extended the terms of the credit facility with a letter agreement dated September 16, 2014. The letter agreement extended the credit facility for 365 days after the closing date, specified to be "not later than September 30, 2014." It reduced the lending limit from $80 million to $57.2 million, and required that all proceeds arising from the collateral be applied to amounts due under the facility. Corrigan, Levine, and the TFA affiliates guaranteed TFA's obligations under the letter agreement.

Plaintiffs claim that Capital One violated the terms and covenants of the letter agreement as well as the loan agreement. Plaintiffs assert specifically that despite the closing deadline set for September 30, 2014, Capital One did not provide draft closing documents for review and execution until November 7, 2014, and that, although TFA commented on the draft closing documents within one week, and objected to the new proposed provision calling for liens on assets of TFA affiliates, in December 2014, Capital One told TFA that it would not release the documents until after it had completed field evaluations, and demanded 20 different categories of documents from TFA. TFA cooperated fully, and the examination was completed by December 31, 2014. Capital One then demanded field examinations of the guarantors. Such examinations were neither authorized by the letter agreement nor "usual and customary." TFA's affiliates raised concerns that the process would be very burdensome and had not been required in the past. However, Capital One refused to explain its purpose.

On January 6, 2015, Capital One further demanded that TFA submit a borrowing base certificate and cure a $1.1 million deficiency. After a Capital One representative acknowledged that there was no requirement in the letter agreement for the borrowing base demand, that the sought disclosures were not contractually required, and that his colleagues were on a "witch hunt," the representative was fired by Capital One.

On April 2, 2015, Capital One sent TFA's principals—rather than their known legal counsel—a proposed standstill agreement, which imposed burdensome conditions on TFA, including requiring that TFA (1) make admissions regarding its alleged default of the loan agreement, (2) not make any more loans to anyone in excess of $25,000, (3) pay a default interest rate on the amounts owed, even though the parties were still negotiating, (4) pay $600,000 plus legal fees, and (5) waive all rights or claims of any kind that they had against Capital One. It had been signed by Capital One and backdated to December 1, 2014, and did not acknowledge the existence or terms of the letter agreement. Subsequent negotiations were fruitless.

Capital One initiated an action to enforce the guaranties, and TFA commenced this contract action, containing causes of action for (1) breach of the loan agreement, (2) breach of the covenant of good faith and fair dealing with respect to the loan agreement, (3) breach of fiduciary duty toward TFA and the guarantors, (4) fraud with respect to Capital One's alleged misstatements and omissions regarding its commitment to the joint venture, (5) unfair competition, (6) negligent impairment of collateral, (7) breach of the letter agreement, (8) a declaratory judgment that the loan agreement is invalid and unenforceable against TFA and the guarantors, that Capital One materially breached and repudiated the agreement, and that TFA and the guarantors have no liability to Capital One, and (9) a declaratory judgment that the guarantors are not liable to Capital One under their guaranties.

Capital One moved to dismiss the complaint in its entirety. The motion court, to the extent relevant on appeal, dismissed the claims for fraud and breach of the letter agreement, but declined to dismiss the claims for breach of the loan agreement, breach of the implied covenant of good faith and fair dealing, and declaratory judgments with respect to the loan agreement and the guaranties.

Capital One appeals from the denial of its motion to dismiss the breach of contract, breach of the implied covenant of good

faith and fair dealing, and declaratory judgment claims. TFA and the guarantors appeal from the dismissal of their claims for fraud and breach of the letter agreement.

Capital One moved separately for summary judgment in lieu of complaint against Corrigan and Levine on the guaranties. The court denied the motion. The appeal from that order is decided simultaneously herewith (147 AD3d 677 [2017]).

We uphold the dismissal of the claims for fraud and breach of the letter agreement, but modify to dismiss TFA's claims for breach of the loan agreement and breach of the implied covenant of good faith and fair dealing, and to declare in defendant's favor with respect to liability under the agreements.

■ In view of the provisions of the loan agreement expressly allowing Capital One to deny any requests for advances in its "sole and absolute discretion," and specifically authorizing Capital One to deny any such requests for any reason, it cannot be said that Capital One violated the contract by failing to advance funds as requested, even if that decision put TFA out of business.

Although "[i]n New York, all contracts imply a covenant of good faith and fair dealing in the course of performance" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002]), the existence of the covenant cannot be relied on as grounds for TFA's action.* The covenant of good faith and fair dealing cannot negate express provisions of the agreement (*see 767 Third Ave. LLC v Greble & Finger, LLP*, 8 AD3d 75 [1st Dept 2004]), nor is it violated where the contract terms unambiguously afford Capital One the right to exercise its absolute discretion to withhold the necessary approval (*see Moran v Erk*, 11 NY3d 452 [2008]). Where a contract allows one party to terminate the contract in "its sole discretion" and for "any reason whatsoever," the covenant of good faith and fair dealing cannot serve to negate that provision (*see ELBT Realty, LLC v Mineola Garden City Co., Ltd.*, 144 AD3d 1083, 1084 [2d Dept 2016] [internal quotation marks omitted]; *see also National Westminster Bank, U.S.A. v Ross*, 130 BR 656, 679 [SD NY 1991], *affd sub nom Yaeger v National Westminster*, 962 F2d 1 [2d Cir 1992]; *Cookware Company [USA], LLC v*

---

* To the extent defendants may not have framed their argument to the motion court regarding the claim for violation of the covenant of good faith and fair dealing precisely as they do on appeal, we address the merits of their argument here since it is a pure question of law (*see Buttitta v Greenwich House Coop. Apts., Inc.*, 11 AD3d 250 [1st Dept 2004]).

*Austin,* 2016 WL 7378762, *8, 2016 US Dist LEXIS 177691, *21 [SD NY, Dec. 8, 2016, 15 Civ 5796 (DAB)]). Notably, where the parties intended to limit either party's rights under the loan agreement so that they could only be exercised "in good faith," they specifically included such language; for example, section 1.1 of the agreement allows Capital One to establish a valuation methodology "in its sole and absolute discretion *exercised in good faith*" (emphasis added). In contrast, the provision of section 2.1 authorizing Capital One to decline any request for an advance "in its sole and absolute discretion" lacks any such limitation requiring Capital One to act in good faith when doing so. Because Capital One's complained-of conduct consists entirely of acts it was authorized to do by the contract, its alleged motivation for doing so is irrelevant. Simply put, an intent to put TFA out of business cannot justify a lawsuit for a claimed breach of the covenant where the express provisions of the agreement allowed Capital One to act as it did.

■ The causes of action for declaratory relief concern the separate litigation brought by Capital One to enforce the guaranties of the loan agreement. They rely on the provisions of those guaranties creating a limitation of liability where there is "a final adjudication by a court of competent jurisdiction of a valid defense to [TFA]'s obligations under the Loan Documents to payment of its liabilities." In support of their claims for declaratory judgments, plaintiffs allege that breach of contract and negligent interference with collateral constitute valid defenses to TFA's obligations under the loan agreement. However, breach of contract and negligent interference with collateral are not defenses to TFA's liability under the loan agreement; they are merely counterclaims. The adjudication of these claims will not affect TFA's liability for repayment of the amounts borrowed before the breach occurred, but, had the claims been brought in the same litigation, could have resulted in a setoff from the amount TFA owed (*see generally Metropolitan Switch Bd. Mfg. Co., Inc. v B & G Elec. Contrs., Div. of B & G Indus., Inc.*, 96 AD3d 725 [2d Dept 2012]; *Color Mate v Chase Manhattan Bank*, 168 AD2d 534 [2d Dept 1990]).

Accordingly, the order of the Supreme Court, New York County (Saliann Scarpulla, J.), entered July 21, 2016, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss as to the claims for breach of contract, breach of the implied covenant of good faith and fair

dealing, and declaratory judgments with respect to the loan agreement and the guaranties, and granted the motion as to the claims for fraud and breach of the letter agreement, should be modified, on the law, to grant defendants' motion as to the claims for breach of contract and breach of the implied covenant, and, to declare that plaintiffs are liable to defendants under the loan agreement and the guaranties, and otherwise affirmed, without costs.

TOM, J.P., RENWICK, FEINMAN and GESMER, JJ., concur.

Order, Supreme Court, New York County, entered July 21, 2016, modified, on the law, to grant defendants' motion as to the claims for breach of contract and breach of the implied covenant, and to declare that plaintiffs are liable to defendants under the loan agreement and the guaranties, and otherwise affirmed, without costs.