| Dematteis/Darcon v City of New York |
|:---:|
| 2025 NY Slip Op 31516(U) |
| April 26, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 652893/2016 |
| Judge: Andrea Masley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

------------------------------------------------------------------------------------X

DEMATTEIS/DARCON, JOINT VENTURE,

                                   Plaintiff,

                  - v -

THE CITY OF NEW YORK,

                                   Defendant.

------------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652893/2016 |
| **MOTION DATE** | -- |
| **MOTION SEQ. NO.** | 008 |

**DECISION + ORDER ON MOTION**

AMENDED

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 008) 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 536, 537, 538, 542, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561, 562, 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 582, 583, 584, 585, 589

were read[1] on this motion to/for          SUMMARY JUDGMENT (AFTER JOINDER)          .

**Background**

This action arises out of the construction of the Manhattan Community Districts 1/2/5 Garage (Garage) for the New York City Department of Sanitation (DSNY) located at Spring and West Streets, New York, New York.  (NYSCEF Doc. No. [NYSCEF] 524, Technical Specification for General Construction at 8/76.[2])  In October 2010, plaintiff DeMatteis/Darcon, Joint Venture (DeMatteis) and defendant the City of New York, through DSNY (collectively, City) entered into a contract for the construction of the Garage at a contract price of $194,844,500.  (NYSCEF 359, Decision and Order at 1-2 [mot. seq. no. 004].)  In 2011, DSNY informed DeMatteis that it had assigned the

---

[1] Where appropriate, the court also considered documents referenced in the parties' briefs but omitted in this autogenerated caption.

[2] NYSCEF pagination.

**652893/2016   DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK**
**Motion No.  008**

**Page 1 of 19**

[* 1]

Contract to the New York City Department of Design and Construction (DDC) (collectively with DSNY and the City, City) and that DDC would administer the project. (*Id.* at 9.) During the construction, numerous change orders were issued, and the City extended the original contract completion date of March 20, 2014, several times. (*See* NYSCEF 545, Steven Tartaro[3] aff ¶ 4; NYSCEF 505, Amended Notice of Claim [Notice] at 2/24.) The substantial completion the Garage was achieved on December 3, 2015, i.e. with a delay of 623 days. (NYSCEF 505, Notice at 2, 6/24.)

DeMatteis commenced this action on May 31, 2016, asserting causes of action for (i) breach of contract arising from the City's failure to issue a change order to pay for the 623-day delay within 60 days of DeMatteis' submission of a Final Verified Statement of Claims under sections 11.1.3 and 11.9 of the City's Standard Construction Contract (Contract) and (ii) breach of contract related to Addendum 2, Section 01271 of the Technical Specifications for General Construction (Section 01271), a provision offering DeMatteis an early completion incentive of up to $900,000. (NYSCEF 2, Complaint ¶¶ 22-50.) DeMatteis seeks damages of $57,331,521.80 on the first cause of action and $900,000 on the second cause of action. (*Id.* ¶¶ 44, 50.)

DeMatteis' motion for partial summary judgment on liability on the first cause of action was denied. (NYSCEF 359, Decision and Order at 25 [mot. seq. no. 004].)

The City moves pursuant to CPLR 3212 for partial summary judgment: (i) dismissing DeMatteis' second cause of action; and, as relevant for the first cause of action, (ii) finding that nonparties United Parcel Service (UPS) including its contractor,

---

[3] Tatro is senior vice president of construction for Leon D. DeMatteis Construction Corp, a member of DeMatteis, and the senior executive for DeMatteis charged with direct daily responsibility for the project. (NYSCEF 545, Tartaro aff ¶¶ 1-2.)

652893/2016  DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK        Page 2 of 19
  Motion No.  008

[* 2]

Consolidated Edison, Inc. (Con Ed), and St. John's University (St. John's) are third parties under the Contract, such that DeMatteis' delay damages attributable to these parties are non-compensable, (iii) finding that UPS and its contractor caused at least 41 days of delay and Superstorm Sandy caused at least 3 days of delay that are non-compensable, without limiting the City's right to demonstrate at trial additional days of delay attributable to either cause, (iv) finding that Con Ed caused at least 73 days of delay that are non-compensable, without limiting the City's right to demonstrate at trial additional days of delay attributable to Con Ed, and (v) finding that DeMatteis cannot recover claimed delay damages of $3,797,887.24 for overhead and profit, $263,334.07 in profit for home office overhead, and $396,090 for winter conditions.

**Discussion**

Under CPLR 3212, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [citations omitted].) Once the movant has made such a showing, the burden shifts to the opposing party to demonstrate, with admissible evidence, facts sufficient to require a trial, or summary judgment will be granted. (*See Winegrad v NY Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985].) "[S]ummary judgment may be granted as to one or more causes of action, or part thereof, in favor of any one or more parties, to the extent warranted, on such terms as may be just." (CPLR 3212 [e].) A party may seek summary judgment "seeking dismissal of claims for specified and distinct categories of damages." (*Koch v Consol. Edison Co.*, 62 NY2d

652893/2016   DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK
Motion No.  008

Page 3 of 19

3 of 19

548, 560 [1984] [citations omitted], *rearg denied* 63 NY2d 771 [1984], *cert denied* 469 US 1210 [1985].)

I.        Second Cause of Action

DeMatteis alleges that it is entitled to a $900,000 incentive payment for early achievement of Milestone 4 anticipated per the February 22, 2011 project schedule. (NYSCEF 2, Complaint ¶¶ 46-47, 50.)  "[T]hrough no fault of" its own, DeMatteis was allegedly prevented from completing Milestone 4 work early.  (*Id.* ¶ 48.)  DeMatteis demanded an incentive payment, but the City refused to pay.  (*Id.* ¶ 49.)

The elements of a cause of action for breach of contract are "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages."  (*Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010] [citation omitted].)

Section 01271 provides that "[t]o encourage timely completion, the City is … providing incentive payments for early achievement of Milestone Number 4."  (NYSCEF 504, Section 01271 ¶ 1.02 [A].)

> "A. The Commissioner may authorize an incentive if he determines, in the exercise of his sole and absolute discretion, that the Contractor has successfully completed the work under Milestone Number 4 prior to the required time for completion as described in Schedule 'A' and Article 1.05 … which is eleven hundred and ninety (1190) days. The determination of the Commissioner with respect to the award of an incentive payment shall be accepted as final, binding and conclusive….
>
> C. The Commissioner may, in the exercise of his sole and absolute discretion, find that the work would have received a determination of completion prior to the actual time of completion but that such determination was precluded solely by actions by the City. The amount of the incentive in such a case would be calculated from the date (as found by the Commissioner) that the Contractor would have otherwise been entitled to receive a determination of completion."  (*Id.* ¶ 1.03 [A], [C].)

652893/2016   DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK                       Page 4 of 19
Motion No.  008

4 of 19

[* 4]

Section 01271 unambiguously states that the commissioner "may authorize the incentive" (*id.* ¶ 1.03 [A]), including when timely completion of milestone 4 work "was precluded solely by actions by the City," and that the commissioner's decision as to whether the timely completion was so precluded "may" be made "in the exercise of his sole and absolute discretion." (*Id.* ¶ 1.03 [C].) Where, as here, the contract includes permissive language and authorizes a party to use sole and absolute discretion, a party's exercise of its authority under the contract does not constitute a breach. (*See Seeking Valhalla Trust v Deane*, 182 AD3d 457, 458 [1st Dept 2020] [defendant "did not breach the operating agreement … by exercising her express sole discretion to reallocate sharing ratios, even down to zero, at any time" (citation omitted)], *lv denied* 36 NY3d 904 [2020]; *Tr. Funding Assoc., LLC v Capital One Equip. Fin. Corp.*, 149 AD3d 23, 29 [1st Dept 2017] [where loan agreement "expressly allow[ed] [defendant] to deny any requests for advances in its 'sole and absolute discretion,' and specifically authoriz[ed] [defendant] to deny any such requests for any reason, it cannot be said that [defendant] violated the contract by failing to advance funds as requested, even if that decision put [plaintiff] out of business"]; *see also Freedom Mtge. Corp. v Engel*, 37 NY3d 1, 21 [2021] [where mortgages states that noteholder "may" accelerate maturity upon borrower's default, "whether to exercise this contractual right is a matter within the noteholder's discretion – the noteholder is not obliged to accelerate the loan upon a default" (citation omitted)].)

This claim fails for the additional reason that per Section 01271, any determination with respect to an incentive payment award "shall be accepted as final, binding and conclusive." (NYSCEF 504, Section 01271 ¶ 1.03 [A]; *see Lynch v HUB*

**652893/2016 DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK**
**Motion No. 008**

**Page 5 of 19**

[* 5]

5 of 19

*Intl. Group Northeast Inc.*, 224 AD3d 479, 480 [1st Dept 2024] [affirming dismissal of breach of contract claim where plaintiff's written acceptance of earnout statements stated that earnout payment amounts "were 'deemed…accepted' and were 'final, binding and conclusive on the parties'" [citation omitted].)

DeMatteis fails to raise any issues of fact. Indeed, DeMatteis fails to address the City's arguments regarding the second cause of action "inticat[ing] an intention to abandon this basis of liability." (*Gary v Flair Beverage Corp.*, 60 AD3d 413, 413 [1st Dept 2009] [citation omitted].) The second cause of action is dismissed.

II.     First Cause of Action: Liability for Delay Damages

In the first cause of action, DeMatteis alleges that it is entitled to monetary damages as a result of the project delays totaling 623 days for which the City is responsible. (NYSCEF 2, Complaint ¶ 44.) As relevant to liability on the first cause of action, the City seeks summary judgment (ii) finding that UPS including its contractor, Con Ed, and St. John's are third parties under the Contract, such that DeMatteis' delay damages attributable to these parties are non-compensable, (iii) finding that UPS and its contractor caused at least 41 days of delay and Superstorm Sandy caused at least 3 days of delay that are non-compensable, without limiting the City's right to demonstrate at trial additional days of delay attributable to either cause, and (iv) finding that Con Ed caused at least 73 days of delay that are non-compensable, without limiting the City's right to demonstrate at trial additional days of delay attributable to Con Ed.

The Contract allocates the risk of delays damages as follows:

"11.4 Compensable Delays

11.4.1. The Contractor agrees to make claim only for additional costs attributable to delay in the performance of this Contract necessarily extending the time for

**652893/2016   DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK**                    **Page 6 of 19**
**Motion No.  008**

6 of 19

[* 6]

completion of the Work or resulting from acceleration directed by the City and required to maintain the project schedule, <u>occasioned solely by any act or omission to act of the City listed below.</u> The Contractor also agrees that delay from any other cause shall be compensated, if at all, solely by an extension of time to complete the performance of the Work." (NYSCEF 502, Contract ¶ 11.4.1 [at 21/88] [emphasis added and omitted].)

"11.5. Non-Compensable Delays. The Contractor agrees to make no monetary request for, and has included in its bid prices for the various items of the Contract, the extra/additional costs attributable to any delays caused by or attributable to the items set forth below. For such items, the contractor shall be compensated, if at all, solely by an extension of time to compete the performance of the Work ….

11.5.1 The acts or omissions of any third parties, including but not limited to other contractors, public/ governmental bodies (other than City agencies), utilities or private enterprises, who are disclosed in the contract documents or are ordinarily encountered or generally recognized as related to the Work;

11.5.2 Any situation which was within the contemplation of the parties at the time of entering into the Contract, including any delay indicated or disclosed in the contract documents or generally recognized as related to the nature of the Work, and/or the existence of any facility or appurtenance, owned, operated or maintained by any third party, as indicated or disclosed in the contract documents or ordinarily encountered or generally recognized as related to the nature of the Work;…

11.5.6 Climatic conditions, storms, floods, droughts, tidal waves, fires, hurricanes, earthquakes, landslides or other catastrophes …." (*Id.* ¶¶ 11.5, 11.5.1, 11.5.2, 11.5.6 [at 21-22/88] [emphasis omitted].)

*St. John's*

As to St. John's, the City seeks a limited finding that St. John's is a third party within the meaning of sections 11.5.1 and 11.5.2 of the Contract.[4]

Delay damages attributable to the conduct of "third parties, including … other contractors … utilities or private enterprises, who are disclosed in the contract documents or are ordinarily encountered or generally recognized as related to the

_____

[4] The City admits that the extent of delays caused by St. John's is disputed. (NYSCEF 534, Moving Brief at 8/31 n 1.)

[* 7]

Work" are non-compensable. (*Id.* ¶ 11.5.1 [at 22/88] [emphasis omitted].) Another type of non-compensable delay damages are those attributable to "the existence of any facility or appurtenance, owned, operated or maintained by any third party, as indicated or disclosed in the contract documents or ordinarily encountered or generally recognized as related to the nature of the Work." (*Id.* ¶ 11.5.2 [at 22/88].) "Contract Documents" are defined as "each of the various parts of the contract referred to in Article 1." (*Id.* ¶ 2.1.8 [at 10/88].) Article 1 lists "Specifications" and "General Conditions" as parts of the Contract. (*Id.* ¶¶ 1.1.2, 1.1.3 [at 9/88].)

St. John's was disclosed as the owner of an adjacent building. (NYSCEF 524, Technical Specification for General Construction at 21, 36, 40, 50, 66/76.) Additionally, Eric Schatz, the City's expert, avers that "[a]djacent property owners like St. John's are often encountered or generally recognized as related to the work on a project such as this, which is in close proximity to the property line." (NYSCEF 526, Schatz aff ¶¶ 1-2, 12.) Accordingly, there are no issues of fact that St. John's was a third party within the meaning of section 11.5.1 of the Contract; and there existed a facility owned by St. John's as a third party within the meaning of section 11.5.2 of the Contract.

DeMatteis fails to raise an issue of fact. The issue raised in the opposition brief – whether the delay in site delivery is attributable to the City rather than St. John's – is outside of scope of this motion.[5]

---

[5] Per the Contract, delay damages due to "[t]he unavailability of the site for an extended period of time that significantly affects the scheduled completion of the contract" are compensable only when such unavailability is "occasioned solely by any act or omission to act of the City." (NYSCEF 502, Contract ¶¶ 11.4.1, 11.4.1.3 [at 21/88] [emphasis omitted].) Thus, when site unavailability is not "occasioned solely by any act or omission to act of the City" (*id.* ¶ 11.4.1 [at 21/88]), delay damages are non-compensable. Contrary to DeMatteis' proposed interpretation, sections 11.4.1 and

**652893/2016 DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK                    Page 8 of 19**
    **Motion No. 008**

[* 8]

*UPS & Superstorm Sandy*

The City seeks a finding that UPS and its contractor caused a non-compensable delay of at least 41 days. UPS was the owner of the lot where the Garage was to be constructed. (*See* NYSCEF 522, Purchase and Sale agreement ¶¶ 1, 3 [at 5/194].) The City and UPS agreed that UPS would submit the lot to a condominium regime, sell one of the condominium units to the City for the construction of the Garage, and retain the grade level condominium unit. (*Id.* ¶¶ 4-6 [at 5/194].)

First, UPS was disclosed as the owner and operator of the site. (NYSCEF 524, Technical Specification for General Construction at 49/76; NYSCEF 504, Section 01271 ¶ 1.07 [C].) UPS was also disclosed as the prospective owner of the grade level condominium unit, and UPS' contractor was disclosed as the entity with which DeMatteis would need to coordinate. (NYSCEF 503, General Conditions for Major Construction Contracts ¶ 1[G][1][a] [at 10/23].) This evidence demonstrates that UPS and its contractor were a disclosed third party within the meaning of section 11.5.1 of the Contract. Additionally, the evidence demonstrates that within the meaning of section 11.5.2 of the Contract (i) UPS' construction activities constituted a situation within the contemplation of the parties and (ii) there existed a facility owned by UPS as a third party.

---

11.4.1.3 are consistent with sections 11.5 and 11.5.1. Pursuant to sections 11.5 and 11.5.1, delay damages are non-compensable when the damages are "caused by or attributed to" the conduct of certain third parties, which includes delay damages in connection with site unavailability. (*Id.* ¶ 1.5; *see id.* ¶ 11.5.1 [at 21-22/88].) The case cited by DeMatteis, *Rad & D'Aprile, Inc. v Arnell Constr. Corp.*, 203 AD3d 855, 857 (2d Dept 2022) involved site delivery delays caused by the City of New York. *Rad & D'Aprile, Inc.* does not support the proposition that sections 1.5 and 11.5.1 of the Contract, which limits the City's liability for damages due to delay in site delivery caused by certain third parties, is unenforceable.

[* 9]

To show that UPS and its contractor caused a delay, the City relies primarily on a report prepared by DeMatteis' expert which supports the proposition that a delay of 41 days is attributable to UPS' plumbing work. (NYSCEF 518, Nautilus Consulting, LLC (Nautilus) Report at 5, 6, 71, 72, 80/112.) The report, however, is not in admissible form – it contains "no jurat, stamp of a notary public, or any other indication that the expert[] w[as] actually sworn." (*Morales v Gross*, 191 AD3d 439, 439 [1st Dept 2021] [citations omitted].)[6] Accordingly, Nautilus' report is insufficient to carry the City's summary judgment burden. The City, however, also relies on Schatz's affidavit stating that "slow progress and lack of resources by UPS" and its contractor caused 48 days of delay. (NYSCEF 526, Schatz aff ¶ 18; *see id.* ¶¶ 16-17.) The remaining cited evidence support the proposition that UPS caused delays. (*See* NYSCEF 509, tr at 137:11-16 [Laura Guidice[7] depo] [stating that UPS and its contractors caused major delays]; NYSCEF 516, tr at 37:20-38:4 [Joseph Spallina[8] depo] [stating that UPS' plumbing work caused delays].) Thus, the court finds that there are no issues of fact that 48 days of delays are attributable to the conduct of UPS and its contractor and thus are non-compensable. (*See generally New Hampshire Ins. Co. v MF Global, Inc.*, 108 AD3d 463, 467 ["A court deciding a motion for summary judgment is empowered to search the record and may, even in the absence of a cross motion, grant summary judgment to a nonmoving party" (citations omitted)]; CPLR 3212 [b].) Further, the City has

---

[6] Indeed, in its reply brief, the City argues that the Nautilus' report is inadmissible. (NYSCEF 584, Reply Brief at 10/19.)

[7] Guidice of Nautilus co-authored the Nautilus report. (NYSCEF 509, tr at 8:9-18 [Guidice depo].)

[8] Spallina was employed by DeMatteis' as a project manager. (NYSCEF 516, tr at 14:8-10 [Spallina depo].)

[* 10]

demonstrated that there are no issues of fact that Superstorm Sandy caused at least a 3-day non-compensable delay. (*See* NYSCEF 526, Schatz aff ¶ 18; NYSCEF 555, Guidice aff ¶ 3.)

DeMatteis fails to raise any issues of fact. Nether the settlement memorandum and settlement agreement between the City and UPS resolving these parties' delay damages dispute under the Purchase and Sale Agreement between them (NYSCEF 574, Settlement Agreement, NYSCEF 575, Settlement Memo), nor the evidence that "the City did not include the UPS work in the Project Plans and Specifications" (NYSCEF 545, Tartaro aff ¶ 14) have any bearing on the determination of whether UPS' 48-day is compensable under the Contract. DeMatteis' assertation that the City controlled UPS is not supported by evidence.

*Con Ed*

Con Ed was disclosed as a third party that would be involved in the construction. (NYSCEF 525, Technical Specifications for Plumbing, HVAC (Mechanical), Electrical at 74, 81-83/84.) Further, Schatz avers that "[u]tilities companies like Con Ed are often encountered or generally recognized as related to the work on a project such as this." (NYSCEF 526, Schatz aff ¶ 13.) Thus, there are no issues of fact that Con Ed was a third party within the meaning of section 11.5.1 of the Contract.

The City's evidence demonstrates that Con Ed's conduct caused three periods of delays. First, Con Ed caused a delay of 19 days, from February 13 through March 3, 2014, by delaying, due to an employee's vacation, completion of flood test and inspection of the transformer vault and Network Protection Room (NPR) located inside the Garage. (NYSCEF 526, Schatz aff ¶ 20 ["[DeMatteis] completed the waterproofing

652893/2016 DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK
Motion No. 008

Page 11 of 19

[* 11]

of the NPR on February 13, 2014. Con Ed did not perform the flood test and inspection until March 3, 2014, 19 days after the waterproofing work was completed"]; *see also* NYSCEF 528, Arcadis Report at 66/137.)

DeMatteis fails to raise an issue of fact that the 19-day inspection delay is attribute to the City, specifically, the City's Bulletin #54 issued on December 4, 2012, which introduced certain project changes. The requirement for the flood test was part of the project all along. (NYSCEF 526, Schatz aff ¶ 20 ["[t]he flood test requirement was included prior to the issuance of Bulletin #54, in Con Ed Specification EO-1007 Section 7.0, which is referenced on the original Contract Drawing 374020-0-0"]; NYSCEF 528, Arcadis Report at 66/137; NYSCEF 529, Contract Drawing 374020-0-0 and Specification EO-1007.) DeMatteis' evidence does not raise an issue of fact that the 19-day inspection delay is attribute to Bulletin #54. (NYSCEF 545, Tartaro aff ¶ 12 [discussing impact of Bulletin #54]; NYSCEF 554, DeMatteis Memo on Bulletin #54 impact; NYSCEF 557, Timothy Mulvihill[9] aff ¶ 14 [discussing impact of Bulletin #54].)

Second, Con Ed caused a delay of 22 days, from May 20 to June 11, 2014, due to delays in delivery of equipment and materials. (NYSCEF 526, Schatz aff ¶ 21 ["NPR, including installation of equipment, was to be completed on May 20, 2014. However, Con Ed did not provide all of the material in a timely manner, and did not timely identify all of the required materials"; following identification of need for additional equipment, "NPR was … forecasted to be completed on June 11, 2014, 22 days later than

_____

[9] Mulvihill is a senior project manager at nonparty Barbaro Electric Co. Inc., DeMatteis' subcontractor. (NYSCEF 557, Mulvihill aff ¶ 1.)

**652893/2016  DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK**
**Motion No. 008**

**Page 12 of 19**

[* 12]

planned"];[10] NYSCEF 528, Arcadis Report at 69/137; NYSCEF 509, tr at 186:23-25 [Guidice depo] [Con Ed was responsible to provide missing parts]; *id.* at 189:18-24 [Con Ed's failure to provide parts caused delay of 28 days]; NYSCEF 512, Mulvihill June 12, 2024 Letter ["list of outstanding material is having a severe impact on the ability to maintain the previously provided completion date of July 4, 2014"].)  DeMatteis fails to raise an issue of fact that the 22-day delay is attribute to Bulletin #54 as it proffers no evidence in support of this contention.

Third, Con Ed caused a delay of 32 days, from February 12 to March 16, 2015, by delaying connection of the feeders for permanent power due to "issues in bringing Con Ed personnel to the site to perform the necessary work."  (NYSCEF 526, Schatz aff ¶ 22 ["site was ready to have permanent power connected by Con Ed on February 12, 2015…. Con Ed failed to connect the feeders for permanent power until March 16, 2015"]; *see* NYSCEF 528, Arcadis Report at 71/137; NYSCEF 509, tr at 193:13-20 [Guidice depo] [there were delays by Con Ed in installing feeder connections].)

Finally, DeMatteis' cited evidence does not support its argument that the City caused the delays by agreeing to give Con Ed a certain period of time to complete work. (*See* NYSCEF 572, email chain at 3/5 [Con Ed stating that "Con Ed estimates approximately 2-3 weeks per feeder pick up"].)  To the extent DeMatteis argues that the time that Con Ed took was not a delay at all but rather fell within the normal timeframe

---

[10] Schatz avers that "NPR completion was eventually delayed further [i.e. beyond June 22, 2014] due to other reasons, but Con Ed's failure to timely provide the materials and equipment to be housed in the NPR and vault room caused a 22-day delay to the project." (NYSCEF 526, Schatz aff ¶ 21.)

**652893/2016   DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK**    **Page 13 of 19**
  Motion No.  008

13 of 19

[* 13]

for completion of its work, the effect would be the same – absence of any compensable delay.

*DeMatteis' Remaining Arguments*

DeMatteis argues that it is entitled to a mitigation credit for mitigating delays, i.e. partially catching up with the project schedule. Specifically, DeMatteis argues that it mitigated or avoided substantial delays in excess of "all Excusable Non-Compensable Delays (i.e., City, third-party and force majeure delay) and all Non-Excusable Delays ([DeMatteis] and subcontractor delay), leaving only Excusable and Compensable Delays under Article 11 attributed to [change orders]" which total 623 days. (NYSCEF 578, Opp Brief at 6/28.) DeMatteis, however, fails to explain how its alleged entitlement to mitigation credit factors into the analysis of whether the delays at issue are compensable under sections 11.4 and 11.5 of the Contract. Indeed, nothing in the language of these sections suggest that any delay mitigation efforts affect the classification of delays as compensable or non-compensable.[11] Finally, the unsworn Nautilus report is inadmissible (*see supra* at 10) and thus cannot raise issues of fact.

DeMatteis next argues that the City should lose the protection of section 11 of the Contract limiting its liability for delay damages because (i) the City breached its obligation under section 11.1.3 of the Contract which requires DDC commissioner to make a determination within 60 days of submission of the Final Verified Statement of Claims "as to whether a compensable delay has occurred and, if so, the amount of

---

[11] The court notes that claims for additional costs "resulting from acceleration directed by the City and required to maintain the project schedule, occasioned solely by any act or omission to act of the City" and listed in section 11.4.1 of the Contract are compensable. NYSCEF 502, Contract ¶ 11.4.1 [at 21/88] [emphasis omitted].) In this action, however, DeMatteis has not asserted a claim for additional costs resulting from acceleration.

compensation due" to DeMatteis (NYSCEF 502, Contract ¶ 11.1.3 [at 10-21/88]) and (ii) that breach "was intentional, subverting the promise of the Article 11 'Pilot Program,' meant to induce bidders to eliminate City-delay contingency amounts from their bids, that those City-attributed delay claims would be fairly compensated at the agency level." (NYSCEF 578, Opp Brief at 25/28.)

DeMatteis' argument fails. When "delays [are] caused by the contractee's bad faith or its willful, malicious, or grossly negligent conduct," the contract's limitation of liability provision is unenforceable. (*See Corinno Civetta Constr. Corp. v City of New York*, 67 NY2d 297, 309 [1986]; *see also Kalisch-Jarcho, Inc. v. New York*, 58 NY2d 377, 385 [1983].) DeMatteis, however, does not argue that City caused any of the delays at issue in bad faith making the provisions limiting its liability for damages attributable to such delays enforceable. Rather, DeMatteis alleges the breach in not timely making a determination as to whether compensable delays occurred as the grounds for not enforcing the limitation on liability provision. In such circumstances, *Corinno Civetta Constr. Corp.* is inapplicable. In any event, DeMatteis' contention at most supports a claim of an intentional breach of section 11.1.3 of the Contract "which is insufficient to void the limitation of liability provision." (*Electron Trading, LLC v Morgan Stanley & Co. LLC*, 157 AD3d 579, 582 [1st Dept 2018] [citations omitted] ["a party can intentionally breach a contract to advance a 'legitimate economic self-interest' and still rely on the contractual limitation provision" (citation omitted)].)

III.    First Cause of Action: Damages – Overhead and Profit, Home Office Overhead, Winter-Related Costs

The City argues that it is entitled to summary judgment dismissing three categories of damages that DeMatteis seeks on the first cause of action: overhead and

652893/2016 DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK Page 15 of 19
Motion No. 008

15 of 19

[* 15]

profit costs totaling $3,797,887.24, profit on home office overhead totaling $263,334.07, and damages for winter-related costs totaling $396,090. (NYSCEF 505, Notice at 13-19/24.)

*Overhead and Profit[12]*

DeMatteis calculates overhead and profit costs by adding 21% to all the itemized costs allegedly incurred due to project delays, such as wage increases, project supervision, and price increase on materials. (*See id.* at 14-17/24.) The Contract, however, unambiguously states profit is not recoverable as part of delay damages. (NYSCEF 502, Contract ¶¶ 11.7.3, 11.7.3.1 [at 23/88] ["[t]he parties agree that the City will have no liability for the following items and the Contractor agrees it shall make no claim for the following items … [p]rofit, or loss of anticipated or unanticipated profit" (emphasis omitted)].) DeMatteis fails to raise an issue of fact. Accordingly, the profit portion of the overhead and profit costs is dismissed. (*See Telemark Constr. v Greenberg*, 205 AD2d 438, 440 [1st Dept 1994] ["plaintiff was properly denied lost profits since, given the contract's express terms … such damages were outside the contemplation of the parties" (citation omitted)].)[13]

The City argues that the overhead portion of the claimed overhead and profit is duplicative because overhead costs are already sought in the itemized costs, e.g. costs

---

[12] "The theory behind awards of overhead and profit, respectively, is that unanticipated additional involvement in a particular project entitles the contractor to retrieve additional portions of his fixed overhead costs which would have been otherwise retrieved through other projects, and to recover a reasonable profit on additional costs incurred due to the unanticipated involvement." (Commercial Litigation in New York State Courts § 149.24, Damages for Owner's Breach [5th ed, Oct. 2024 update].)

[13] As no calculation of profit is proffered, the court is unable to determine the amount of unrecoverable profit.

652893/2016 DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK
Motion No. 008

Page 16 of 19

for project supervision and general conditions/field costs.[14] "[A] plaintiff is entitled to only one recovery with respect to an identical damage claim." (*Leighty v Brunn*, 125 AD2d 648, 648-49 [2nd Dept 1986] [citations omitted].) Issues of fact, however, preclude summary judgment. In the absence of any evidence explaining what costs were included in each itemized cost item, it is unclear whether the overhead portion of overhead and profit seeks double recovery, i.e. overhead on overhead. Schatz's affirmation which lays no foundation for Schatz's conclusory statements about DeMatteis' calculation fails to eliminate issues of fact. (*See* NYSCEF 526, Schatz aff ¶ 32; *Roques v Noble*, 73 AD3d 204, 206 [1st Dept 2010] ["expert testimony must be based on facts in the record or personally known to the witness, and … an expert cannot reach a conclusion by assuming material facts not supported by record evidence …. Thus, a defendant in a medical malpractice action who, in support of a motion for summary judgment, submits conclusory medical affidavits or affirmations fails to establish prima facie entitlement to summary judgment" (citations omitted)].)

*Home Office Overhead[15]*

In addition to itemized costs and overhead and profit discussed above, DeMatteis seeks to recover home office overhead of $2,633,240.66, plus $263,334.07 representing 10% profit on home office overhead. (NYSCEF 505, Notice at 19/24.) In support of its claim for home office overhead, DeMatteis states that "[a]s a direct result

---

[14] The court notes that per the Contract, recoverable overhead costs incurred due to compensable delays are limited to (i) extended contract site overhead, (ii) extended home office overhead, and (iii) an overhead of 5% of the labor, materials and equipment costs when the work is performed by a subcontractor. (NYSCEF 502, Contract ¶¶ 11.7.1.1-11.7.1.3, 11.7.1.5-11.7.1.6, 11.7.2 [at 22-23/88].)

[15] Home office overhead refers to fixed costs relating to a contractor's central or "home" office. (*See Berley Indus., Inc. v City of New York*, 45 NY2d 683, 687 [1978].)

652893/2016 DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK Page 17 of 19
Motion No. 008

17 of 19

of the extended period of time that was required to complete the Contract scope of work, DeMatteis incurred additional indirect costs in support of its corporate operations" that "could not be absorbed by new work." (*Id.* at 18/24.)

The City argues that the 10% profit on home office overhead is unrecoverable. Indeed, as discussed, the Contract unambiguously states that profit is not recoverable as delay damages. (NYSCEF 502, Contract ¶¶ 11.7.3, 11.7.3.1 [at 23/88].) The Notice references section 26 of the Contract as the basis for recovering the 10% profit on home office overhead. Section 26, however, is inapplicable to home office overhead; it only allows for recovery of profit in connection with certain costs accosted with extra work, i.e. work other than that required by the Contract. (NYSCEF 502, Contract ¶¶ 2.1.15, 26.2, 26.2.10, 26.2.11, 26.3, 26.5 [at 10, 41, 42/88.)

*Winter Impact on Trade Work*

DeMatteis seeks recovery of winter impact on trade work costs of $396,090 in connection with the delay period from December 17, 2010, through April 6, 2011, when "DeMatteis was completely denied access to the Project Site." (NYSCEF 505, Notice at 14/24.) The City argues that the winter impact on trade work damages should be dismissed. The City relies on Schatz's affirmation where Schatz avers in a conclusory fashion that "delays pushed the impacted work out of the winter months" and "DeMatteis never suffered any of the $396,090 in projected inefficiencies." (*See* NYSCEF 526, Schatz aff ¶ 34.) Schatz's conclusory statement, however, is insufficient to carry the summary judgment burden. (*See Roques*, 73 AD3d at 206.)

The Court has considered the balance of the parties' argument and concludes that such arguments are either without merit or do not affect the outcome.

652893/2016  DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK
Motion No.  008

Page 18 of 19

[* 18]

Accordingly, it is

ORDERED that the City of New York's motion for partial summary judgment is granted to the limited extent that: (i) the second cause of action is dismissed; (ii) St. John's University was a third party within the meaning of section 11.5.1 of the Contract, and there existed a facility owned by St. John's University as a third party within the meaning of section 11.5.2 of the Contract; (iii) United Parcel Service and its contractor caused a delay of 48 days which is non-compensable pursuant to sections 11.5.1 and 11.5.2 of the Contract; (iv) Superstorm Sandy caused a delay of 3 days which is non-compensable pursuant to section 11.5.6 of the Contract; (v) Consolidated Edison, Inc. caused a delay of 73 days which is non-compensable pursuant to section 11.5.1 of the Contract; (vi) the profit portion of overhead and profit costs is dismissed; and (vii) profit of $263,334.07 on home office overhead is dismissed; and it is further

ORDERED that the balance of the motion is denied; and it is further

ORDERED that motions in limine shall be filed by order to show cause by June 9, 2025, otherwise waived; and it is further

ORDERED that the parties shall appear for a trial scheduling conference at 12:30 on April 28, 2025; and it is further

ORDERED that the parties are directed to review Part 48 Trial Procedures in advance of the trial scheduling conference.

| | |
|---|---|
| **4/26/2025** | 20250426211459AMASLEY286585E155864E8EA65B0E027DA69C7E |
| **DATE** | **ANDREA MASLEY, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

652893/2016   DEMATTEIS/DARCON, JOINT vs. CITY OF NEW YORK
Motion No. 008

Page 19 of 19

[* 19]